**Horace Franklin DUNKINS, Jr., Petitioner–Appellant,**

v.

**Morris THIGPEN, Commissioner of Alabama Department of Corrections, and W.E. Johnson, Warden, Holman Unit, Respondents–Appellees.**

No. 87–7529.

United States Court of Appeals, Eleventh Circuit.

Aug. 18, 1988.

---

4. Fla.Stat. § 48.193(1)(b) (1985).

John C. Falkenberry, Falkenberry & Whatley, North Birmingham, Ala., for petitioner-appellant.

Ed Carnes, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

Petition for Rehearing and Suggestion for Rehearing In Banc

Before HILL, FAY and VANCE, Circuit Judges.

VANCE, Circuit Judge:

On petition for rehearing, the court withdraws its previous opinion dated May 27, 1988, and substitutes the following opinion. The petition for rehearing is otherwise DENIED and no member of this panel nor other judge in regular active service on the court having requested that the court be polled on rehearing in banc, the suggestion for in banc consideration is DENIED.

## I.

On May 27, 1980 two sheriff's deputies arrested petitioner and transported him along with a co-worker to the Jefferson County Courthouse. Petitioner was a suspect in the rape and murder of Lynn McCurry.[1] After the deputies read petitioner his rights, they began to interrogate him. After a few questions, petitioner stated: "Before I talk anymore now, I would like to talk to my lawyer or either my mama or somebody...." After this statement, the deputies asked a few more questions [2] and arranged a lineup. The police then returned petitioner and his co-worker to their place of employment. At some point during the day, petitioner agreed to take a polygraph test.[3]

The next morning, Sergeant House picked up petitioner at work and brought him to the Sheriff's office for the polygraph test. After the test Dunkins was returned to his job. Later that day House brought petitioner back for more questioning. An hour or so later petitioner signed a waiver of his rights and confessed his complicity in the crime.

A Jefferson County Circuit Court jury convicted Dunkins and sentenced him to death. After unsuccessfully challenging his conviction and sentence on direct appeal and on collateral attack in the Alabama courts, petitioner filed a habeas petition in the district court. The district court denied the petition, and Dunkins brought this appeal.

## II.

## A.

Petitioner contends that the admission of the May 28 confession violated his fifth amendment right to counsel under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Petitioner argues that under *Miranda* his expression of desire to speak with an attorney precluded any further questioning, and that under *Edwards* he did not waive his right to have counsel present by responding to further police initiated investigation.

The Supreme Court has held that once a defendant expresses a desire to deal with the police only through counsel, the authorities may not further interrogate the defendant until "counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversation with the police." *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1885; *See Arizona v. Roberson*, — U.S. ——, 108 S.Ct. 2093, 2097, 100 L.Ed.2d 704 (1988); *Connecticut v. Barrett*, 479 U.S. 523, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987). Thus once a defendant has requested counsel, *Edwards* permits the police to resume questioning only if the defendant initiates contact with police. *See Oregon v. Bradshaw*, 462 U.S. 1039, 1043, 103 S.Ct. 2830, 2833, 77 L.Ed.2d 405 (1983); *Edwards*, 451 U.S. at 485, 101 S.Ct. at 1885; *Collins v. Francis*, 728 F.2d 1322, 1332 (11th Cir.), *cert. denied*, 469 U.S. 963, 105

---

1. The facts and the procedural history of the case are set out in *Dunkins v. State,* 437 So.2d 1349, 1351–52 (Ala.Crim.App.), *aff'd Ex Parte Dunkins,* 437 So.2d 1356 (Ala.1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984), and *Dunkins v. State,* 489 So.2d 603, 604–05 (Ala.Crim.App.1985).

2. Respondent characterizes these questions as "personal data questions." Petitioner alleges that they were designed to connect petitioner to the crime.

3. There is some confusion over who initiated the idea of taking a polygraph test: petitioner, petitioner's co-worker or the sheriff's deputies. The Alabama Court of Criminal Appeals, the Alabama Supreme Court, and the district court all describe petitioner's decision to take the test differently.

S.Ct. 361, 83 L.Ed.2d 297 (1984). Even if a defendant has initiated contact with the police after requesting counsel, any statements made are still inadmissible unless they are the product of a knowing and voluntary waiver. *See Bradshaw,* 462 U.S. at 1045, 103 S.Ct. at 2834; *id.* at 1054 n. 2, 103 S.Ct. at 2840 n. 2 (Marshall, J. dissenting); *Wyrick v. Fields,* 459 U.S. 42, 46–48, 103 S.Ct. 394, 395–96, 74 L.Ed.2d 214 (1982); *Edwards,* 451 U.S. at 486 n. 9, 101 S.Ct. at 1885 n. 9; *Wilson v. Murray,* 806 F.2d 1232, 1237 (4th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 197, 98 L.Ed.2d 149 (1987).[4]

Respondent argues first that *Edwards* does not bar the admission of petitioner's confession because the police honored Dunkins' request. Petitioner wanted to see a lawyer or his mother or somebody, and he did in fact see his mother. Respondent argues second that *Edwards* does not exclude the confession because petitioner was not continually in custody between the time of his assertion of the right to counsel and his confession. While the first argument is probably meritorious, we believe that the second argument is an even more compelling basis for holding that the police did not violate *Edwards.*[5]

Several circuits have required that there be no break in custody before the *Edwards* rule will operate to exclude a confession. In these cases, the courts of appeals have held that even when the police wrongfully ignore a defendant's request for counsel, subsequent confessions obtained from even police initiated interrogation are admissible if there has been an intervening break in custody. *See McFadden v. Garraghty,* 820 F.2d 654, 661 (4th Cir.1987); *United States v. Fairman,* 813 F.2d 117, 125 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987); *United States v. Skinner,* 667 F.2d 1306, 1309 (9th Cir.1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983). We agree that a break in custody dissolves a defendant's *Edwards* claim. If the police release the defendant, and if the defendant has a reasonable opportunity to contact his attorney, then we see no reason why *Edwards* should bar the admission of any subsequent statements. A break in custody after the invocation of fifth amendment rights ends the need for the *Edwards* rule.[6]

In this case, petitioner made a somewhat ambiguous statement that included a request to see his attorney. Even assuming that this statement triggered *Edwards,*[7]

---

**4.** The fact that the defendant initiated contact with the police is relevant to the determination of whether a subsequent waiver is valid. *See Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986); *Tinsley v. Purvis,* 731 F.2d 791, 795 n. 4 (11th Cir.1984).

**5.** Respondent also argues that by volunteering to take a polygraph examination, petitioner initiated the interrogation that followed. Because we base our decision on the break in custody grounds, we do not need to reach the initiation argument. *See infra* note 8.

**6.** There is no contention that the break in custody was contrived or pretextual. We do not imply that our holding would be the same in the event of a contrived or pretextual break in custody.

**7.** Dunkins' statement that he wanted to see his lawyer, his mother or somebody else arguably invoked *Edwards.* Courts have developed conflicting standards for resolving ambiguous requests for counsel. *Smith v. Illinois,* 469 U.S. 91, 95–99 & n. 5, 105 S.Ct. 490, 492–95 & n. 5, 83 L.Ed.2d 488 (1984). The Supreme Court has held that requests for counsel should be inter-

preted broadly. *Barrett,* 107 S.Ct. at 832; *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986). *But see Barrett,* 107 S.Ct. at 832 (defendant's statement that he agreed to talk with the police but would not make any written statements without counsel present made subsequent oral confession admissible); *Griffin v. Lynaugh,* 823 F.2d 856, 862–63 (5th Cir.1987) (defendant's request for *his* attorney as opposed to *an* attorney invoked only a limited right to counsel under *Barrett* and *Edwards*).

In *Smith* the defendant, responding to police questions as to whether he understood his right to counsel and whether he wished to talk without his lawyer present, stated: "Uh, yeah. I'd like to do that" and "yeah and no, uh. I don't know what's what, really." 469 U.S. at 93, 105 S.Ct. at 491. The Supreme Court held that these statements were enough to trigger *Edwards. Id.* at 96–100, 105 S.Ct. at 493–95; *see also Roberson,* at 2099 (defendant's statement that he "wanted a lawyer before answering any questions" was not a limited request for counsel). On the other hand, the Supreme Court has held that if the defendant's statements make no indication at all that the defendant desires an attor-

and regardless of whether or not petitioner initiated further discussion with the police,[8] we hold that petitioner's release from his initial custody provided him with substantial opportunity to speak with those he wished to consult. The admission of his subsequent confession therefore did not violate his constitutional rights under *Edwards*.

### B.

Petitioner also argues that his waiver of his *Miranda* rights was not voluntary, knowing and intelligent. Petitioner, citing *Hines v. State*, 384 So.2d 1171 (Ala.Crim. App.1980), contends that his confession was neither voluntary nor knowing because a psychological assessment performed after his arrest revealed that petitioner was "functioning at the high mild range of mental retardation." Because of this condition, petitioner argues that he could not have waived his rights voluntarily and intelligently.

The Supreme Court has held that the inquiry into whether a defendant has waived his rights under *Miranda* voluntarily, knowingly and intelligently has two distinct dimensions:

> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986); *see Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987); *Evans v. McCotter*, 790 F.2d 1232, 1238 (5th Cir.), *cert. denied*, 479 U.S. 922, 107 S.Ct. 327, 93 L.Ed.2d 300 (1986); *United States v. McClure*, 786 F.2d 1286, 1288–90 (5th Cir. 1986). Thus "a valid waiver of *Miranda* rights must not only be voluntary; it must

---

ney present, then *Edwards* does not apply. *See Burbine*, 106 S.Ct. at 1142 n. 1; *Tinsley v. Purvis*, 731 F.2d at 795 n. 4; *see also Fare v. Michael C.*, 442 U.S. 707, 724, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197 (1979) (request to speak with a probation officer does not invoke defendant's fifth amendment rights).

**8.** The *Edwards* requirement that the defendant must initiate contact with the police creates the issue of what kind of contact the defendant has initiated. In *Bradshaw* the defendant, at the suggestion of a police officer, agreed to take a polygraph test, and then after the test confessed his guilt. 462 U.S. at 1042, 103 S.Ct. at 2833. A plurality of four justices found that by requesting a polygraph test and asking "well, what is going to happen to me now," the defendant "evinced a willingness and a desire for a generalized discussion about the investigation...." *Id.* at 1045–46, 103 S.Ct. at 2835; *see United States v. Obregon*, 748 F.2d 1371, 1381 (10th Cir.1984) (defendant's question to police inquiring what would happen to him if he talked initiated contact under *Edwards*); *see also Wyrick*, 459 U.S. at 47, 103 S.Ct. at 396 (by requesting a polygraph examination, defendant initiated interrogation about the crime of which he was suspected). The three dissenting justices disagreed that the polygraph test request initiated a general conversation about the crime.

*Bradshaw*, 462 U.S. at 1055–56, 103 S.Ct. at 2840 (Marshall, J., dissenting) ("If respondent's question had been posed by Jean–Paul Sartre before a class of philosophy students, it might well have evinced a desire for a 'generalized' discussion.")

Federal courts have had some difficulty determining when defendants "evince a willingness and a desire for a generalized discussion" under the initiation prong of the *Edwards* analysis. *See Lamp v. Farrier*, 763 F.2d 994, 997–98 (8th Cir.), *cert. denied*, 474 U.S. 1009, 106 S.Ct. 534, 88 L.Ed.2d 465 (1985). This is particularly true when the case involves statements connected with the administration of a polygraph test. *Compare United States v. Nordling*, 804 F.2d 1466, 1471 (9th Cir.1986) (no need to readminister *Miranda* rights before questioning defendant about the results of a polygraph test) *and Barrera v. Young*, 794 F.2d 1264, 1265 (7th Cir. 1986) (waiver and consent to take a polygraph test allows prosecution to use as evidence any post-examination statements) *with Rothgeb v. United States*, 789 F.2d 647, 651 (8th Cir.1986) (evidence of defendant's demeanor during polygraph questioning is admissible even though results and evidence of a refusal to take the test may not be) *and United States v. Gillyard*, 726 F.2d 1426, 1429 (9th Cir.1984) (*Wyrick* does not establish a per se rule that *Miranda* warnings are not required after a polygraph test).

also be *intelligently* made." *Miller v. Dugger*, 838 F.2d 1530, 1538 (11th Cir.1988) (emphasis in original). Mental illness, moreover, is a factor to be considered by the trial court when ruling on the validity of a waiver. *Id.* at 1539; *see Cooper v. Griffin*, 455 F.2d 1142, 1145 (5th Cir.1972); *McClure*, 786 F.2d at 1289.

Applying *Burbine* and *Miller* to the facts of this case, we find that petitioner's waiver was both voluntary and intelligent. Mental retardation does not by itself prevent a defendant from voluntarily waiving his constitutional rights. *See Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 523–24, 93 L.Ed.2d 473 (1986). The voluntariness of a *Miranda* waiver depends on the absence of police overreaching, and not on any broad sense of "free choice." *Id.* 107 S.Ct. at 523; *see United States v. Scheigert*, 809 F.2d 1532, 1533 (11th Cir. 1987). Petitioner does not argue on appeal that his confession was involuntary due to any police overreaching or coercion.[9] We hold therefore that petitioner's waiver of his *Miranda* rights was not involuntary.

We also hold that petitioner's waiver was knowing and intelligent. The issue of petitioner's ability to understand his *Miranda* rights and competently waive them was not specifically raised at trial. Petitioner presented no psychiatric evidence to the trial court. *Cf. Cooper*, 455 F.2d at 1143–44 (defendant presented testimony of four special education teachers at suppression hearing); *McClure*, 786 F.2d at 1289 (defendant presented testimony of a clinical psychologist at suppression hearing). Indeed, the evidence before the trial court at the suppression hearing indicated that petitioner behaved in such a way that he understood his rights and waived them knowingly and voluntarily.[10] On direct appeal, the Alabama Court of Criminal Appeals agreed:

We have thoroughly reviewed the totality of the circumstances surrounding both statements given by the defendant, including the facts that he was nineteen years old and almost illiterate. Our assessment of these facts convinces us that both statements were completely voluntarily given after a knowing and intelligent waiver of constitutional rights.

*Dunkins v. State*, 437 So.2d 1349, 1353 (Ala.Crim.App.1983).

The claim that petitioner did not make a knowing and intelligent waiver because he was "moderately retarded and functionally illiterate" first appears in his coram nobis petition. Petitioner also introduced for the first time a psychiatric report from Bryce State Hospital. The report stated:

[Mental examination] revealed no delusions or hallucinations, though he did have a preoccupation with his legal situation and the possibility of going to jail concerned him greatly, but in an appropriate way.... [Petitioner's] judgment and insight were fair; attention span and memory were within normal range; calculations and general information store were within normal range.

. . . .

The psychological assessment revealed that Mr. Dunkins is functioning at the high mild range of mental retardation with his adaptive behaviors falling within the borderline range. Test results are not suggestive of organic impairment.

At the coram nobis hearing, petitioner's trial counsel testified that petitioner's parents told him that petitioner "didn't have any real problems other than being slow." Petitioner's trial counsel also testified: "I never had any real trouble communicating with him. He was able to discuss fully with me the events...." [11]

Faced with this evidence, the coram nobis court ruled that petitioner's confession

---

**9.** In his petition for rehearing, petitioner asserts for the first time the existence of police overreaching as a basis for finding his confession involuntary. Because petitioner did not make this argument to the court earlier, it is not before us now.

**10.** There was no evidence of petitioner's low IQ or any other mental impairment at the suppression hearing or at trial. Although there was

testimony that petitioner could not read, he had his rights read to him. Petitioner indicated that he understood his rights and knew he was waiving them in order to tell his version of the events.

**11.** Petitioner's trial counsel considered raising an insanity defense, but decided against this strategy as potentially inflammatory. We reject petitioner's claim that his decision constituted

was properly admitted at trial. On the second appeal, the Alabama Court of Criminal Appeals reaffirmed its prior holding that petitioner's waiver was knowing, intelligent and voluntary. The court explained:

> The circumstances surrounding the petitioner's confession indicate that he did in fact understand and voluntarily waive his rights. Moreover, a person functioning in the high mild range of mental retardation, such as the petitioner, can intelligently waiver their rights. It is the opinion of this court that petitioner did in fact voluntarily waive his rights and his confession was properly admitted.

*Dunkins v. State*, 489 So.2d 603, 610 (Ala. Crim.App.1985) (citations omitted).

Based on these facts and the totality of circumstances surrounding the interrogation, *see Burbine*, 106 S.Ct. at 1141, we agree with the courts below that despite the fact that petitioner's IQ may have been somewhat below normal, he understood his *Miranda* rights and knowingly waived them.[12] All of the evidence supports the state court's findings, and petitioner has presented no new evidence of any mental impairment.[13]

Petitioner therefore made a voluntary, knowing and intelligent waiver of his *Miranda* rights. His subsequent confession was properly admitted at trial.

### C.

 Petitioner argues finally that he was denied effective assistance of counsel

both at the trial level and on direct appeal. After reviewing the record, we believe that petitioner's counsel in the Alabama state court system performed admirably in formulating and pursuing petitioner's defense strategy at trial and on appeal. We therefore find that petitioner has failed to satisfy both the performance and the prejudice prongs of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[14]

### III.

We conclude that none of petitioner's contentions has merit. The district court's denial of the petition for habeas corpus is therefore

AFFIRMED.

---

ineffective assistance of counsel. *See infra* Part II.C.

**12.** The ultimate question of the admissibility of a confession is a legal issue requiring plenary federal review. *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985); *Lindsey v. Smith*, 820 F.2d 1137, 1150 (11th Cir. 1987); *see Ballard v. Johnson*, 821 F.2d 568, 571 (11th Cir.1987).

**13.** Petitioner's reliance on *Hines* is misplaced. In *Hines*, the defendant had an IQ of 39, and there was extensive testimony that the defendant could not have understood his *Miranda* rights as they were read to him. *See* 384 So.2d at 1176–81. In this case, petitioner's impairment is considerably less severe, and there was virtually no testimony at the coram nobis hear-

ing that petitioner could not comprehend his rights.

**14.** Petitioner also argues that the district court abused its discretion by failing to conduct a hearing on all aspects of the petition, particularly on the ineffective assistance of counsel claim. We disagree. The state court conducted an evidentiary hearing, which included the ineffective assistance claim. Petitioner identifies no particular need for another hearing except to make sure that the district court "appreciate the magnitude of the ineffective assistance issue." This is not enough to meet petitioner's burden of establishing a need for an evidentiary hearing. *See Collins*, 728 F.2d at 1344–46; *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir.) (in banc), *cert. denied*, 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984).