UNITED STATES, Appellant,

v.

Lowell GREEN, Appellee.

No. 91–29.

District of Columbia Court of Appeals.

Argued April 17, 1991.

Decided May 31, 1991.

Roy W. McLeese, III, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Lisa A. Prager, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellant.

Joseph R. Conte, Washington, D.C., for appellee.

James Klein and Page Kennedy, Public Defender Service, Washington, D.C., filed a brief amicus curiae.

Before ROGERS, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

FARRELL, Associate Judge:

The government appeals from an order suppressing the confession of appellee (hereafter defendant) in this murder prosecution. The trial judge ruled that the police, in eliciting the confession, violated the prophylactic rule of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), as further explained in *Minnick v. Mississippi,* —— U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). The government argues that suppressing the confession in this case amounts to a wholly unwarranted extension of the *Edwards* rule to circumstances presenting none of the concerns that impelled that decision or its sire, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The government's argument has force, as the trial judge recognized; but like the trial judge we conclude that the Supreme Court's teachings in this area so far do not countenance a departure from the "bright-line" rule of *Edwards* in the present circumstances. We therefore uphold the suppression of defendant's confession.

I.

Defendant originally was arrested on July 18, 1989, on a charge of possessing a controlled substance with intent to distribute. He signed a police advice-of-rights (PD 47) form that day and answered "No" in writing to the question whether he was willing to answer questions without having an attorney present. Defendant was presented in court the next day and an attorney was appointed to represent him. He was held on bond until July 28, 1989, when the drug case was dismissed at preliminary hearing. It appears that he was then remanded to the custody of juvenile

authorities, presumably in connection with a juvenile matter pending against him at the time. He was subsequently indicted on the drug charge, but failed to appear for his arraignment on August 22, 1989, apparently because he was in the custody of juvenile authorities. When eventually located, he was arraigned in the drug case on September 7, 1989. A bond was imposed and he remained in custody on the bond until September 27, 1989, when he pled guilty to the lesser included offense of attempted possession with intent to distribute cocaine. Following the plea, he was held in the Youth Center at the Lorton Reformatory while a Youth Act Study (D.C.Code § 24–803(e) (1989)) was conducted. On February 26, 1990, he was sentenced to fifteen months' incarceration under the Youth Act.

Meanwhile, on January 4, 1990, while defendant was at Lorton, Detective Donald Gossage of the Metropolitan Police Department obtained an arrest warrant charging him with the murder of Cheaver Herriott on December 30, 1988. Also on January 4, Detective Gossage obtained an order directing that defendant be brought up the next day from the Youth Center to be booked and formally presented on the murder warrant. On January 5, defendant was brought to the police Homicide Office to be booked. Detective Gossage advised him of his *Miranda* rights by reading to him both sides of the PD 47 form. Defendant chose to waive his *Miranda* rights, so indicating by his answers to the four questions on the form. After he discussed with Gossage his involvement in the murder of Cheaver Herriott, defendant was again advised of his rights and agreed to make a videotaped statement, in which he confessed involvement in the robbery and killing of Herriott.

Following his indictment on April 17, 1990 on various charges including first-degree murder, defendant moved to suppress his confession on several grounds, chief among them that it had been obtained in violation of *Edwards v. Arizona, supra*, in view of his original refusal—at the time of his arrest on the drug charge—to answer questions without counsel being present. The trial judge heard testimony and initially denied the motion to suppress, concluding that "none of the reasons which underlie [the Supreme] Court's decision[s] which have addressed a criminal defendant's right to [counsel] under the 6th Amendment and his right not to incriminate himself under the 5th Amendment[ ] would be served by suppression" of defendant's murder confession.[1] The judge emphasized three points. First, an "extraordinary amount of time [over five months] ... [had] elapsed between" defendant's invocation of rights in the drug case and his waiver of rights in connection with his confession to murder. Second, although he was under some form of restraint of liberty during the entire five or more months, during the last part of that period he was not being held in jail but rather in the presumably less coercive environment of the Youth Center. Finally, defendant had had the opportunity to consult repeatedly with counsel during the period between his invocation of rights in the drug case and his waiver of rights before his murder confession.

Three days after the court's initial ruling, however, the Supreme Court decided *Minnick v. Mississippi, supra*. The judge reconsidered his ruling on the Fifth Amendment issue in light of *Minnick*, noting in particular that the "most significant[ ]" ground of his ruling had been the appointment of counsel and the opportunity defendant had had to consult counsel in the months prior to the reinitiation of questioning by the police—a factor specifically addressed by *Minnick*, and held not to justify a departure from *Edwards*. On the strength of *Minnick*'s specific holding and its reaffirmation of the "bright-line" test established by *Edwards*, the judge reversed his earlier ruling and ordered the

---

1. The government argues, and we agree, that this case presents no issue of violation of defendant's right to counsel under the Sixth Amendment. *See, e.g., Illinois v. Perkins,* — U.S. —, 110 S.Ct. 2394, 2399, 110 L.Ed.2d 243 (1990);

*United States v. Gouveia,* 467 U.S. 180, 187–88, 104 S.Ct. 2292, 2296–98, 81 L.Ed.2d 146 (1984); *Woodson v. United States,* 488 A.2d 910, 912 (D.C.1985).

confession suppressed.[2] The government noted this timely appeal. D.C.Code § 23–104(a)(1) (1989).

## II.

In *Edwards v. Arizona* the Supreme Court held:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation, even if he has been advised of his rights.... [A]n accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1884–85. "Preserving the integrity of an accused's choice to communicate with police only through counsel is the essence of *Edwards* and its progeny." *Patterson v. Illinois*, 487 U.S. 285, 291, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988). The Court has further explained that "[t]he merit of the *Edwards* decision lies in the clarity of its command and the certainty of its application," *Minnick*, 111 S.Ct. at 490: "the *Edwards* rule provides 'clear and unequivocal' guidelines to the law enforcement profession," *id.* (citation and additional internal quotation marks omitted), and it "conserves judicial resources which would otherwise be expended in making difficult determinations of voluntariness." *Id.* at 489.

The government, while acknowledging these purposes of the rule, reminds us that the *Edwards* holding, like the seminal rule of *Miranda*, "is not itself required by the Fifth Amendment's prohibition on coerced confessions, but is instead justified only by reference to its prophylactic purpose." *Connecticut v. Barrett*, 479 U.S. 523, 528, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987). The government points to the Court's statement that "*Edwards* is designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights," *Minnick*, 111 S.Ct. at 489 (quoting *Michigan v. Harvey*, 494 U.S. 344, ——, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990)); "[t]he rule ensures that any statement made in subsequent interrogation is not the result of coercive pressures." *Id.* The government then mounts a multi-pronged case for holding that the circumstances of this case insure both that defendant was not "badgered" into revoking his initial election to communicate with police only through counsel and that "the coercive pressures of custody were not the inducing cause" of his confession. *Id.* at 492.

First, the government points out that the police reinitiated questioning only after defendant had been furnished counsel and consulted with him in the drug case, and that the renewed questioning concerned a crime entirely unrelated to the one regarding which defendant had refused to talk without counsel.[3] These considerations alone cannot support the government's argument. In *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), the Court rejected the argument that the *Edwards* rule "should not apply when the police-initiated interrogation following a suspect's request for counsel occurs in the context of a separate investigation," *id.* at 682, 108 S.Ct. at 2098; "unless he otherwise states, there is no reason to assume that a suspect's state of mind is in any way

---

**2.** The trial judge adhered to his previous rejection of defendant's claims that his confession was involuntary in fact and that it was obtained during an unnecessary delay in bringing defendant to court. *See Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); 18 U.S.C. § 3501 (1988). On appeal defendant does not argue the constitutional involuntariness of the confession as an alternative ground supporting the suppression ruling. He does raise the issue of unnecessary delay, but we reject that claim as did the trial judge. *Bliss v. United States*, 445 A.2d 625, 633 (D.C.1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 756, 74 L.Ed.2d 972 (1983). *See* Super.Ct.Crim.R. 5(a).

**3.** Defendant does not dispute that the drug offense to which he pled guilty was factually unrelated to the December 1988 murder that was the subject of his confession.

investigation-specific" when, by requesting an attorney, he has demonstrated his belief "that he is not capable of undergoing [custodial] questioning without advice of counsel." *Id.* at 684, 108 S.Ct. at 2099 (citations omitted), at 681, 108 S.Ct. at 2097. Here, defendant's insistence on answering questions only with counsel present was unqualified. *Compare Roberson* with *Connecticut v. Barrett, supra.*

Similarly, in *Minnick* the Court clarified *Edwards'* intent that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation *without counsel present,* whether or not the accused has consulted with his attorney." 111 S.Ct. at 491 (emphasis added). The Court rejected the argument that an intervening "opportunity to consult with an attorney outside the interrogation room" was sufficient. *Id.* at 490. In this case it is undisputed that defendant did not have counsel present when Detective Gossage reinitiated questioning.

The government endeavors to narrow *Roberson* and *Minnick* to their individual settings. As in *Edwards* itself, it says, the accused in *Roberson* was "denied the counsel he [had] clearly requested" until after the police reinitiated interrogation. 486 U.S. at 686, 108 S.Ct. at 2100. As in *Edwards* too, *Minnick* involved questioning about the same offense which the accused had refused to discuss without counsel being present. The absence of both these factors in this case, the government submits, takes it outside the reach of *Edwards* and its progeny; in particular, as the trial judge found, defendant had had repeated opportunity to consult counsel before the police approached him about the murder. But if *Edwards, Roberson* and *Minnick* together teach anything, it is the need for great caution in finding distinctions among cases all involving the paradigmatic original request by the accused for counsel, reflecting "his own view that he is not competent to deal with the authorities without legal advice," *Roberson,* 486 U.S. at

681, 108 S.Ct. at 2098 (citation omitted). The Supreme Court having made clear that police-initiated questioning about a separate offense and questioning after opportunity to consult counsel each fails to justify departure from *Edwards'* "bright-line, prophylactic ... rule," *id.* at 682, 108 S.Ct. at 2098, we are not convinced that in combination the Court would regard these two factors differently.

The government next distinguishes the *Edwards* line of cases based upon the sheer length of time between defendant's invocation of the right to counsel and the initiation of questioning about the unrelated homicide offense. There is no question that to the extent *Edwards* is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights," *Minnick,* 111 S.Ct. at 489,[4] that danger is reduced when the police have made no effort to interrogate the defendant for more than five months after his assertion of rights. *Edwards,* the government argues, rests on the assumption that repeated attempts to initiate questioning will "exacerbate" the "compulsion to speak" already felt by one "who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel," *Roberson,* 486 U.S. at 686, 108 S.Ct. at 2100; and that compulsion must be substantially lessened when the police have avoided all efforts to question the person without counsel for so long a period of time.

These are substantial arguments, but there are weighty considerations on the other side of the ledger as well. Although the trial judge attached significance to the fact that defendant apparently was in the presumably less coercive environment of the Youth Center during much of the five to six-month period, the government concedes on appeal "that defendant in this case was in continuous custody for purposes of the *Edwards* prophylactic rule"

---

4. "[T]he coercion inherent in custodial interrogation derives in large measure from an interrogator's insinuations that the interrogation will continue until a confession is obtained."

*Minnesota v. Murphy,* 465 U.S. 420, 433, 104 S.Ct. 1136, 1145, 79 L.Ed.2d 409 (1984) (citing *Miranda,* 384 U.S. at 468, 86 S.Ct. at 1624).

(Brief for Appellant at 21 n. 16).[5] In *Minnick*, although the relevant interval was only a matter of days, the Court emphasized "the coercive pressures that accompany custody and that may *increase* as custody is prolonged." 111 S.Ct. at 491 (emphasis added).[6] Moreover, except for his ongoing contacts with his custodial caretakers, we must assume that defendant's only contact with law enforcement officials (investigators and prosecutors) during this period was through, or in the presence of, his attorney. Hence there is nothing in the lapse of time itself from which to deduce that his original belief in his vulnerability to the pressures of custodial interrogation had diminished as he progressed through the steps of pleading guilty to the (lesser included) offense of attempted drug distribution; it is just as likely that his sense of dependence on, and trust in, counsel as the guardian of his interests in dealing with government officials intensified.

Furthermore, with the government's argument based upon the lapse of time we are again met with the Supreme Court's insistence that the *Edwards* rule be kept "clear and unequivocal." If five months in custody without evidence of police "badgering" is held sufficient to dispel *Edwards'* presumption that any new waiver of rights is involuntary, then why not three months or three weeks? At what point in time—and in conjunction with what other circumstances—does it make doctrinal sense to treat the defendant's invocation of his right to counsel as countermanded without any initiating activity on his part? The government is candid in admitting that a focus on the lapse of time—three days versus three weeks versus three or five months—risks obscuring *Edwards'* lucid rule, but argues that this reversion to *some* sort of case-specific consideration of circumstances is inevitable if *Edwards* is not to become a caricature of itself on facts such as presented here. In his dissent in *Minnick* Justice Scalia likewise scorned what he termed the "perpetual irrebuttable presumption" erected by *Edwards* and its progeny, necessitating the same result if the intervening period "had been three months, or three years, or even three decades." 111 S.Ct. at 496.[7] Ultimately, given its emphasis on the need for a bright-line rule in this area, we think only the Supreme Court can explain whether the *Edwards* rule is time-tethered and whether a five-month interval, during which no efforts at custodial interrogation took place, is too long a period to justify a continuing irrebuttable presumption that any police-initiated waiver was invalid. Until the Court provides further guidance, we are persuaded that so long as the defendant remains in custody the fact that the police did not reinitiate interrogation until five months after he invoked his right to counsel cannot be adequate reason, alone or combined with the factors already treated, to justify a departure from *Edwards'*

---

5. That concession, which as we understand it relinquishes any argument based on differing degrees of coerciveness in the custodial environment for purposes of this appeal, is probably well-advised. Although courts have recognized that different kinds of custody can be more or less coercive with regard to the possibility of self-incrimination, *see Smith v. United States*, 586 A.2d 684, 685 (D.C.1991), the record in this case contains sparse indication of the circumstances in which defendant's liberty was restrained at the Youth Center, an issue on which the government—with superior knowledge of the circumstances—presumably bore the burden of production, if not proof, below.

6. *See also Arizona v. Roberson, supra,* 486 U.S. at 686, 108 S.Ct. at 2100 (pointing to the "serious risk that the mere repetition of the *Miranda* warnings would not overcome the presumption of coercion that is created by prolonged police custody").

7. *Amicus* the Public Defender Service points out that even if *Edwards'* presumption of involuntariness is unaffected by the passage of time or later events, it rationally "can apply only to crimes which have already occurred [and not to future crimes,] since the suspect cannot possibly be asserting a right to refuse to answer questions which could not possibly be posed." PDS thus disputes the notion that the *Edwards* rule, unless in some way time-restricted, admits of no "reasonable limiting principle." The government essentially replies that this limitation to crimes already committed is small comfort to "the public's [legitimate] interest in the investigation of criminal activities." *Maine v. Moulton,* 474 U.S. 159, 180, 106 S.Ct. 477, 489, 88 L.Ed.2d 481 (1985).

command.[8]

The government, however, has saved what might seem to be its most potent argument until last, one that promises adherence to the requirement of some form of bright-line rule. Although defendant was still in custody awaiting sentencing when the police reinitiated questioning, he had pled guilty months earlier in the drug case that caused his arrest and invocation of rights. As the government points out, *Edwards* itself does not make its prophylactic ban permanent: the accused can lift it by reinitiating conversation with the police about the crime. Similarly, several courts have held that *Edwards'* presumption of involuntary waiver fades when the accused is released from custody.[9] The government urges that, so too, "the defendant's knowing, voluntary, and intelligent decision [here], arrived at with the advice of counsel, to plead guilty to the drug offense represents a break in events sufficient to sever any link between the defendant's invocation of his *Miranda* right to counsel in connection with the drug case and police interrogation about the entirely separate crime of murder." Just as the prosecution may show "a sufficient break in events to undermine the inference that [a] confession was caused by [a] Fourth Amendment violation," *Oregon v. Elstad,* 470 U.S. 298, 306, 105 S.Ct. 1285, 1291, 84 L.Ed.2d 222 (1985), so the knowing, voluntary and intelligent waiver of Fifth Amendment protections represented by a presumptively valid guilty plea undermines the assumption that a subsequent waiver of *Miranda* rights was the product of police coercion.

There is no question that defendant's intervening plea of guilty distinguishes this case factually from *Edwards* and succeed-

ing cases, and it is also true that in important respects "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). Nevertheless, we must decide whether by pleading guilty in the drug case defendant can be said to have "reopened the dialogue with the authorities" within the meaning of *Edwards,* 451 U.S. at 486 n. 9, 101 S.Ct. at 1885 n. 9, so as to validate his waiver of rights and interrogation on the murder charge. Defendant points out that he retained his privilege against self-incrimination on the drug charge until sentencing,[10] but that fact is not decisive; the police had little interest in gathering additional evidence of the drug charge. Rather, the answer is implicit in our foregoing discussion. Defendant pled guilty with the advice and assistance of counsel. Hence while the knowing and voluntary plea presumably demonstrated that acceptance of personal responsibility and not the pressures of custody caused him to incriminate himself, it also was consistent with his original election to deal with government officials only through an attorney. Indeed, from defendant's viewpoint the fact that counsel had negotiated a plea to a lesser charge sparing him a mandatory-minimum sentence, D.C.Code § 33–541(c)(1)(A) (1990 Supp.), would only have confirmed the wisdom of his choice to insist on the shield of legal representation. If defendant had other criminal involvement to conceal, or if he merely feared that he would be wrongly implicated in crimes committed by someone else, in either case we must assume he chose the shelter afforded by *Miranda* and *Edwards* to insure that the coercive pressures of custody did not cause him to incriminate himself. Defendant's plea of

---

**8.** Strictly speaking, we have no occasion to decide whether different considerations would come into play if the defendant, although still in custody, were transferred to the general prison population following imposition of sentence. Appellant remained in custody pending sentence on the drug charge at the time the police approached him about the murder.

**9.** *E.g., Dunkins v. Thigpen,* 854 F.2d 394, 397 (11th Cir.1988), *cert. denied,* 489 U.S. 1059, 109

S.Ct. 1329, 103 L.Ed.2d 597 (1989); *United States v. Skinner,* 667 F.2d 1306, 1309 (9th Cir. 1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983); *People v. Trujillo,* 773 P.2d 1086, 1091–92 (Colo.1989) (en banc).

**10.** *See Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Boswell v. United States,* 511 A.2d 29 (D.C.1986).

guilty in the drug case, because it is consistent with his election to communicate with the police only through counsel, cannot be the pivotal break in events that *Edwards* demands before a waiver can be regarded as an initial election by the accused to deal with the authorities on his own.

### III.

The *Edwards* rule, like the rule of *Miranda* itself, remains "an auxiliary barrier against police coercion," *Connecticut v. Barrett,* 479 U.S. at 528, 107 S.Ct. at 832 (emphasis added). Hence it is not unfair to question the logic of a presumption that renders invalid an otherwise knowing, intelligent and voluntary waiver of *Miranda*'s auxiliary protections—and so demands exclusion of a murder confession voluntary in fact—because over five months earlier, in connection with an unrelated crime, the defendant asked for (and was afforded) the assistance of counsel. But this Court's task is to construe the teachings of the Supreme Court as faithfully as it can in constitutional matters. In this case we have tried not to rely merely on "broad language" in *Edwards, Roberson* and *Minnick* which the government admits tends to neutralize the distinguishing features of this case,[11] but instead to ask whether, fundamentally, the Court would regard the custodial circumstances of this case as presenting a "situation[ ] in which the concerns that powered [both *Miranda* and *Edwards* ] are implicated." *Berkemer v. McCarty,* 468 U.S. 420, 437, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984). In *Minnick* the Court summarized those concerns and purposes, stated that "[t]he *Edwards* rule sets forth a specific standard to fulfill these purposes," and admonished that "we have declined to confine [the rule] in other instances," *Minnick,* 111 S.Ct. at 492 (citing *Roberson* ). On balance, we are left

unpersuaded that the Court would confine it in the present situation either, despite the accumulation of distinguishing features the government can point to. If that judgment is wrong, then it is for the Court in this case or some future one to provide the *Leitfaden*—the red thread—through its decisions leading to the correct result.

The order suppressing defendant's confession is

*Affirmed.*

STEADMAN, Associate Judge, dissenting:

The bottom-line issue in this appeal is the degree to which the rule of *Edwards* and its progeny is to extend durationally beyond the paradigm situation involved in those cases: prearraignment continuous custody by arresting officers. *See Minnick v. Mississippi,* —— U.S. ——, 111 S.Ct. 486, 492, 112 L.Ed.2d 489 (1990) ("[w]e are invited by this formulation to adopt a regime in which *Edwards'* protection could pass in and out of existence multiple times prior to arraignment, at which point the same protection might reattach by virtue of our Sixth Amendment jurisprudence").

As reiterated in *Minnick,* the protection of *Edwards* is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights," and "to ensure that any statement made in subsequent interrogation is not the result of coercive pressures." 111 S.Ct. at 489 (citation omitted). It seems to me that the government is correct in its assertion that when an event occurs which represents a sea change in those circumstances which existed at the time the right to counsel was originally invoked, the irrebuttable presumption against a voluntary waiver of the *Miranda* right to counsel should likewise cease. I believe the Supreme Court would so rule.[1] *Cf. Oregon v. Elstad,* 470 U.S.

---

11. In general, the Supreme Court has cautioned that "words of ... opinions are to be read in the light of the facts of the case under discussion.... General expressions transposed to other facts are often misleading." *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944); *see also Air Courier*

*Conference of America v. American Postal Workers Union,* —— U.S. ——, 111 S.Ct. 913, 920, 112 L.Ed.2d 1125 (1991).

1. I recognize that Justice Scalia in his dissent in *Minnick* characterizes the majority as announcing a "perpetuality of prohibition", 111 S.Ct. at

298, 306, 105 S.Ct. 1285, 1291, 84 L.Ed.2d 222 (1985) (prosecution may show "a sufficient break in events to undermine the inference that [a] confession was caused by [a] Fourth Amendment violation"); *Miranda v. Arizona*, 384 U.S. 436, 496, 86 S.Ct. 1602, 1639, 16 L.Ed.2d 694 (1966) (requirement of a break in the stream of events).

It is conceded that *Minnick* constitutes no bar to questioning about a crime occurring *subsequent* to the invocation of the right to counsel. Far short of that, a number of cases have recognized that where a suspect has been released from custody and subsequently again detained, even for the same crime, an invocation of the right to counsel during the original confinement does not prevent the police from seeking a waiver of such a right upon the new confinement. *See, e.g., Dunkins v. Thigpen*, 854 F.2d 394, 397 (11th Cir.1988), *cert. denied*, 489 U.S. 1059, 109 S.Ct. 1329, 103 L.Ed.2d 597 (1989); *United States v. Skinner*, 667 F.2d 1306, 1309 (9th Cir.1982), *cert. denied*, 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).[2]

Similarly, I believe that the government is correct in its assertion that when a defendant has pled guilty to the charge which prompted the invocation of the right to counsel, circumstances have so significantly changed that any coercive effect created by the original confinement must be deemed to have been dissipated, certainly with respect to questioning about an entirely separate and distinct crime. A suspect's concern about self-incrimination that may exist during pre-trial detention must be dramatically affected once, with the advice and assistance of counsel and subject to the elaborate protections provided by Rule 11, he has appeared in court and been convicted from his own mouth. Such an event entailing a knowing, voluntary and intelligent waiver of the Fifth Amendment right against self-incrimination and its conse-

quent concerns—the very right that *Edwards* seeks to protect—should undermine any irrebuttable presumption that a subsequent waiver directed toward an entirely unrelated crime is the product of continuing police coercion. I would so hold.

---

496, but that interpretation does not, of course, speak for the full court.

2. Here, for several months following his invocation of the right to counsel, appellant as a juvenile was apparently held not in any jail or prison as such but rather was in the custody of juvenile authorities. Nonetheless, the government for purposes of this appeal assumes that the appellant was in continuous custody for purposes of the *Edwards* prophylactic rule, and I deal with the appeal on that basis.