[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 17, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-10219
Non-Argument Calendar

_____

D. C. Docket No. 03-00219-CR-T-24TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEJANDRO VALDES-FIALLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 17, 2007)**

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Alejandro Valdes-Fiallo appeals his conviction for conspiracy to possess

with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B)(ii)(II) and 846.  Valdes-Fiallo argues that the district court erred in admitting into evidence Orlando Brito's statements to Miguel and Rudy Ocasios, in violation of the Sixth Amendment, the Federal Rules of Evidence, Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620 (1968), and Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).  Valdes-Fiallo also argues that the district court erred in admitting into evidence Detective Richard Diaz's testimony regarding statements Valdes-Fiallo had made to him while Valdes-Fiallo was in custody, in violation of the Fifth Amendment and Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).  Because we find no reversible error, we AFFIRM.

## I.  BACKGROUND

Prior to trial, Valdes-Fiallo moved to suppress statements that Brito, a non-testifying, co-conspirator and confidential informant ("CI"), made to the Ocasios, two testifying co-conspirators, in secretly recorded conversations.  Valdes-Fiallo argued that Brito's statements were not in furtherance of the conspiracy as is required under Federal Rule of Evidence 801(d)(2)(E).  In response to Valdes-Fiallo's motion to suppress Brito's statements to the Ocasios, the government agreed that Brito's statements were not admissible under Rule 801(d)(2)(E), but asserted that it did not intend to enter the evidence under that rule

2

and reserved the right to offer Brito's statements under a different theory.

At trial, the district court ruled that the recorded conversations between Brito and the Ocasios were admissible because, during opening arguments, there was a suggestion of improper influence or motive and hence a prior statement by a witness (such as one of the Ocasios) could be admitted under Rule 801(d)(1)(B). The court also ruled that Brito's statements were admissible because his statements were not being admitted for the truth of the matter asserted, but rather only to provide context.

Valdes-Fiallo also moved to suppress inculpatory statements that he had made to Detective Diaz while incarcerated and, Valdes-Fiallo argued, without a waiver of his rights and without the presence of his counsel. In response to Valdes-Fiallo's motion to suppress his statements to Detective Diaz, the government argued that Valdes-Fiallo had initiated the contact with Detective Diaz by phone and voluntarily had made statements to him, without prompting, in order to lessen the instant charge. At a hearing for Valdes-Fiallo's motions to suppress, the government called Detective Diaz, who testified that an unknown male family member of Valdes-Fiallo had contacted Detective Diaz three times in one week, indicating that Valdes-Fiallo wanted to talk to Detective Diaz. Detective Diaz testified that because Valdes-Fiallo periodically divulged information to Detective

3

Diaz between 2001 and 2005, he decided to meet with Valdes-Fiallo. Detective Diaz visited Valdes-Fiallo in jail and testified that he told Valdes-Fiallo that he did not want to talk about anything in reference to Valdes-Fiallo's pending charge. Detective Diaz testified that Valdes-Fiallo had volunteered that his information was unrelated to his charge; rather, he claimed he had information concerning drug traffickers in Tampa. Detective Diaz also testified that Valdes-Fiallo had stated he hoped that he could share it in order to help with his pending charge.

On cross-examination, Detective Diaz elaborated that Valdes-Fiallo was not consistent in relaying information, but that the information Valdes-Fiallo divulged was reliable. Detective Diaz admitted that he knew Valdes-Fiallo was under indictment, but he had not called the prosecutor before he went to see Valdes-Fiallo at the jail because he had not planned to talk with him about his pending charge. Detective Diaz explained that he had not called Valdes-Fiallo's counsel or the United States Attorney's Office, and he had not read Valdes-Fiallo his Miranda rights at this meeting because, as Detective Diaz saw it, he "wasn't questioning him." R2 at 59. According to Detective Diaz, Valdes-Fiallo only had provided vague information about drug dealers in Tampa and had not said anything related to his pending case.

The district court found that Valdes-Fiallo's legal rights were not violated

4

because he had initiated the conversation through his family member, and any statement that he had made was not in response to questioning. The district court thus denied Valdes-Fiallo's motion to suppress his statement to Detective Diaz. Ultimately, the jury found Valdes-Fiallo guilty of conspiracy to possess with intent to distribute 500 grams or more of cocaine. This appeal followed.

## II. DISCUSSION

We apply "a mixed standard of review to the denial of a defendant's motion to suppress, reviewing the district court's findings of fact for clear error and its application of law to those facts *de novo*." United States v. Lyons, 403 F.3d 1248, 1250 (11th Cir.), cert. denied, 126 S. Ct. 732 (2005). "We review a district court's evidentiary rulings for abuse of discretion." Id. We review questions of constitutional law *de novo*. United States v. Brown, 364 F.3d 1266, 1268 (11th Cir. 2004).

A. Brito's recorded statements to the Ocasios

With some exceptions and exclusions, the Federal Rules of Evidence bar hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). We have held that recorded statements are not hearsay when they are offered to put a defendant's statements in a conversation

into context. United States v. Price, 792 F.2d 994, 996 (11th Cir. 1986). Evidence that is not offered to prove the truth of the matter asserted is not hearsay. Fed. R. Evid. 801(c); Cargill v. Turpin, 120 F.3d 1366, 1373 (11th Cir. 1997). Additionally, we presume that a jury follows the instructions given to it by the district judge. United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005) (per curiam).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Crawford, 541 U.S. at 59, 124 S. Ct. at 1369. Testimonial hearsay covers "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," such as prior testimony, police interrogations, affidavits, and depositions. Id. at 51-52, 68, 124 S. Ct. at 1364, 1374 (citation omitted). In a joint trial, the admission of a co-defendant's extrajudicial confession that implicates the accused violates the accused's right of cross-examination under the Confrontation Clause. Bruton, 391 U.S. at 126, 88 S. Ct. at 1622. Only those statements by a non-testifying co-

defendant that directly inculpate the defendant give rise to a constitutional violation. United States v. Arias, 984 F.2d 1139, 1142 (11th Cir. 1993).

Valdes-Fiallo makes several arguments regarding the inadmissibility of Brito's statements during Brito's conversations with the Ocasios. Valdes-Fiallo argues that the district court erred in admitting into evidence statements made by Brito because they were not in furtherance of the conspiracy, see Fed. R. Evid. 801(d)(2)(E), and they did not qualify as admissible under the residual hearsay exception of Rule 807. Valdes-Fiallo also contends that the admission of Brito's statements violated the rule announced in Bruton, that is, that the Confrontation Clause prohibits the admission of statements of a non-testifying co-defendant that, standing alone, clearly inculpate the defendant.

As an initial matter, we dispose of Valdes-Fiallo's Rule 801(d)(2)(E) and Rule 807 arguments because the district court did not admit Brito's statements under either of these rules. In addition, Valdes-Fiallo's Bruton argument is inapplicable since the Bruton rule only applies to situations in which a non-testifying co-defendant's statement is admitted against a defendant in a joint trial; Brito was not Valdes-Fiallo's co-defendant in a joint trial. See Cargill, 120 F.3d at 1375 n. 16 (distinguishing Bruton on the grounds that defendant's trial was not a joint trial).

Furthermore, Valdes-Fiallo contends that even though we have held that statements of a non-testifying co-defendant may be admissible to provide context for the <u>defendant's</u> statements, such statements are not admissible to provide context for the statements of someone <u>other than the defendant</u>. We fail to see how, and Valdes-Fiallo does not offer any explanation as to how, this distinction makes a difference. The recorded statements by Brito were not hearsay because they were offered to put into context the statements made by the Ocasios, both of whom testified, in recorded conversations with Brito. <u>Price</u>, 792 F.2d at 996-997 (holding that a CI's statements during taped conversations with the defendant were admissible to supply context to the defendant's statements). Furthermore, the district court issued a limiting jury instruction that Brito's statements were not being admitted for the truth of the matter asserted each time the recordings in question were played for the jury.

Additionally, Valdes-Fiallo's arguments regarding the applicability of <u>Crawford</u> to Brito's statements is misplaced. The Supreme Court noted that the Confrontation Clause applies to "witnesses" who "bear testimony," which the Court indicated "is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact. <u>Crawford</u>, 541 U.S. at 51, 124 S. Ct. at 1364 (citation and internal quotation omitted). As recognized by the <u>Crawford</u>

8

Court, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. 541 U.S. at 59 n. 9, 124 S. Ct. at 1369 n. 9. Here, Brito's statements are not hearsay because they were not used to prove the truth of the matter asserted, but rather, merely to provide context, and thus, do not run afoul of the Confrontation Clause. See United States v. Hendricks, 395 F.3d 173, 184 (3d Cir. 2005) (permitting, after consideration of Crawford, the introduction of "the balance of the [secretly recorded] conversations, i.e., the statements of CI Rivera [that] . . . put the [nontestimonial] statements of the other parties to the conversations into perspective." (citation and internal quotation omitted)). Accordingly, the district court did not err in admitting Brito's statements made during the recorded conversations between him and the Ocasios.

B.  Detective Diaz's testimony regarding Valdes-Fiallo's statements in custody

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V.  The government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 384 U.S. at 444, 86 S. Ct. at 1612.  Once an accused

has invoked his Fifth Amendment rights, he is not subject to further interrogation absent counsel, "unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1885 (1981).

"Even if a defendant has initiated contact with the police after requesting counsel, any statements made are still inadmissible unless they are the product of a knowing and voluntary waiver." Dunkins v. Thigpen, 854 F.2d 394, 397 (11th Cir. 1988). The Supreme Court has held that

> the inquiry into whether a defendant has waived his rights under Miranda voluntarily, knowingly and intelligently has two distinct dimensions:
>
> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Id. at 398 (citations omitted).

We conclude that the district court did not err in admitting Detective Diaz's testimony regarding the statements Valdes-Fiallo made to Detective Diaz while in custody. We first address of Valdes-Fiallo's arguments regarding his exchange

10

with Detective Diaz. Valdes-Fiallo contends that Detective Diaz contradicted himself when testifying about Valdes-Fiallo's reliability, presumably in an attempt to call into question Detective Diaz's credibility. No contradiction exists, however, as Detective Diaz testified that Valdes-Fiallo was unreliable in terms of "when [Detective Diaz] needed him to meet," but otherwise, was reliable in respect to the information he provided. R2 at 55.

Valdes-Fiallo's other arguments relate to Detective Diaz's failure to take notes of the encounter, failure to contact either the United States Attorney's office or his own counsel's office, and failure to read Valdes-Fiallo his rights prior to speaking with him. Importantly, however, Valdes-Fiallo presented no evidence at trial, and does not argue on appeal, that he did not initiate the meeting in question. Detective Diaz's testimony supports the finding that Valdes-Fiallo, through his family member, initiated the meeting. See Christopher v. Florida, 824 F.2d 836, 845 (11th Cir. 1987) (citation omitted) ("'Initiation' means to 'begin' or 'set-going'").

Even were we to assume that the meeting was an "interrogation," the totality of the circumstances surrounding the exchange reveals both an uncoerced choice and the requisite level of comprehension necessary to waive his rights under Miranda. See Dunkins, 854 F.2d at 399; see also Edwards, 451 U.S. at 486 n. 9,

11

101. S. Ct. at 1885 n. 9 ("If, as frequently would occur in the course of a meeting initiated by the accused, the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be 'interrogation.' In that event, the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances . . . ."). Detective Diaz prefaced their meeting with the warning that he did not want to discuss anything related to Valdes-Fiallo's then-pending federal charge. Detective Diaz testified that Valdes-Fiallo then told him that he had some information unrelated to his current charges and that he was hoping his cooperation would assist him with his pending charges. The voluntariness of a <u>Miranda</u> waiver depends on the absence of police overreaching, and Valdes-Fiallo does not argue on appeal that his statement was involuntary due to any police overreaching or coercion, <u>see</u> <u>Dunkins</u>, 854 F.2d at 399, nor does he argue on appeal that he was reinterrogated after he clearly asserted his right to counsel. <u>See</u> <u>Edwards</u>, 451 U.S. at 485, 101 S. Ct. at 1880. As a result, the district court did not err in finding that Valdes-Fiallo initiated the conversation, did not err in denying his motion to suppress his post-arrest statement, and did not abuse its discretion by admitting that statement at trial.

## III.  CONCLUSION

Upon review of the appellate record, and upon consideration of the briefs of the parties, we find no reversible error.  Accordingly, we **AFFIRM.**