UNITED STATES, Appellee,

v.

Michael J. YOUNG, Sergeant,
U.S. Army, Appellant.

No. 97–1053.
Crim.App. No. 9501601.

U.S. Court of Appeals for
the Armed Forces.

Argued June 4, 1998.

Decided Sept. 29, 1998.

For Appellant: *Captain Paul J. Perrone, Jr.* (argued); *Colonel John T. Phelps, II, Lieutenant Colonel Michael L. Walters, Major Leslie A. Nepper* and *Captain Dirk Gifford* (on brief).

For Appellee: *Captain Joel A. Novak* (argued); *Colonel Joseph E. Ross, Lieutenant Colonel Frederic L. Borch, III* and *Captain Elizabeth N. Porras* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was convicted by a panel of officer and enlisted members of conspiracy to commit robbery and robbery, in violation of Articles 81 and 122, Uniform Code of Military Justice, 10 USC §§ 881 and 922, respectively. He was sentenced to a bad-conduct discharge, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority reduced the forfeitures to partial forfeitures for 18 months and otherwise approved the sentence. The Court of Criminal Appeals affirmed the findings and sentence.

We granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO SUPPRESS STATEMENTS MADE BY APPELLANT TO CRIMINAL INVESTIGATORS AFTER APPELLANT INVOKED HIS RIGHT TO COUNSEL.

We hold that if there was any error in admitting appellant's first statement, taken after he invoked his right to counsel, it was harmless.

## FACTS

On May 22, 1995, Special Agent (SA) Robert L. Sanders, a criminal investigator, arrested appellant at his quarters for robbery. SA Sanders transported him to the military police station for questioning. After being properly warned of his rights, appellant waived his rights and was questioned by SA Sanders. Initially, appellant denied any involvement with the robbery. Simultaneously with appellant's interview, another agent was interviewing appellant's co-accused. As SA Sanders interviewed appellant, he took breaks and conferred with the other agent regarding the interview of the co-accused.

SA Sanders learned that the co-accused had confessed and confronted appellant with this information. SA Sanders informed appellant that he only needed to find out where appellant had pawned the stolen watch. Appellant replied, "I guess I want a lawyer." SA Sanders then asked appellant, "You want a lawyer?" Appellant replied that he did.

As SA Sanders and the other agent were leaving the interrogation room, SA Sanders turned to appellant and said, "I want you to remember me, and I want you to remember my face, and I want you to remember that I gave you a chance." After this statement, appellant told SA Sanders to wait because he wanted to talk to him. SA Sanders then reminded appellant that he had just said he wanted an attorney. Appellant replied he did not want to talk to an attorney. Several exchanges concerning a lawyer took place. Finally appellant said, "No, I don't want a f****** lawyer." SA Sanders then resumed the interview, and appellant confessed to participating in the robbery.

Two days after appellant's first statement, he returned to the military police station. After being appropriately advised, he waived his rights. Appellant indicated that he was not fully forthcoming in his earlier statement. He then provided a second, more complete statement.

At trial, the judge denied the defense motion to suppress both statements. The judge found that SA Sanders did not expect a response to his comment and that a reasonable police officer would not have expected appellant to retract his request for counsel. The judge said:

> Instead, I find that the comment was a "parting shot" by an investigator frustrated at having gotten nowhere with an uncooperative suspect and that SA Sanders reasonably thought that he was not going to get anywhere with the accused despite his best effort. I conclude that SA Sanders made the comment expecting to continue out the door and that this expectation was reasonable.

The judge also found that "the accused reinitiated further communication with the police, showing that he did not want to deal with the police only through counsel."

Appellant argues that the judge's findings of facts are clearly erroneous and her conclusions of law are incorrect. He notes that, whether you believe his version or the Government's version, SA Sanders still initiated the encounter after appellant invoked his right to counsel. Appellant further asserts that these remarks by SA Sanders were an interrogation. Appellant claims that SA Sanders did not make his remark out of frustration but, rather, to gain an incriminating response from appellant.

The Government, relying on *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), asserts that SA Sanders's statement was not an interrogation. It contends that appellant initiated further interrogation. It further asserts that the police comment in this case was not calculated deliberately to elicit a retraction of the right to counsel. Thus, the Government contends, this Court should find there was no violation of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Finally, it argues that the judge's findings are supported by the record and were adopted by the court below.

## DISCUSSION

 Generally, review of a military judge's ruling on a motion to suppress re-

quires an abuse of discretion standard. *See, e.g., United States v. Ayala,* 43 MJ 296 (1995). However, this Court examines whether there has been an interrogation as a question of law and employs a *de novo* review. *United States v. Kosek,* 41 MJ 60, 63 (CMA 1994).

Nearly 50 years ago, Congress enacted Article 31, UCMJ, 10 USC § 831, to protect servicemembers from self-incrimination. When the Supreme Court decided *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), it cited a congressional report describing coercive police techniques in response to the argument that rights warnings would interfere with law enforcement officials. *Id.* at 445–48, 86 S.Ct. 1602. Because custodial interrogations "contain[ ] inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely," the Supreme Court fashioned rights warnings to protect individuals subject to custodial interrogation. *Id.* at 467, 86 S.Ct. 1602. In *Miranda,* the Court held that the prosecution may not use a suspect's statements made during a custodial interrogation unless the suspect is informed of his or her rights and the consequences of waiving such rights. *Id.* To further protect these rights, the Supreme Court in *Edwards,* 451 U.S. at 484–85, 101 S.Ct. 1880, stated:

> [A]n accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*See also Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *United States v. Kendig,* 36 MJ 291, 295 (CMA 1993); *United States v. Sager,* 36 MJ 137 (CMA 1992).

What constitutes an interrogation defies a simple definition. The Supreme Court in *Innis* states that an interrogation is "express questioning or its functional equivalent." 446 U.S. at 300–01, 100 S.Ct. 1682. The latter term refers "to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* (footnote omitted).

The definition of "functional equivalent" "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." It includes action "that the police should know is reasonably likely to evoke an incriminating response from a suspect." *Id.; see also United States v. Meeks,* 41 MJ 150, 162 (CMA 1994); *United States v. Lichtenhan,* 40 MJ 466, 468 (CMA 1994).

■ There is no blanket prohibition against a comment or a statement by a police officer after an invocation of rights. *Edwards* is designed to prevent the police from badgering a suspect. *See Oregon v. Bradshaw,* 462 U.S. 1039, 1044, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); *Griffin v. Lynaugh,* 823 F.2d 856 (5th Cir.1987). It does not prevent an individual from changing his or her mind and electing to speak with police. *Edwards,* 451 U.S. at 490, 101 S.Ct. 1880 (Powell, J., concurring in the result).

■ The judge found SA Sanders's statement was made as a "parting shot" by a "frustrated" investigator. But even assuming that the judge's findings are clearly erroneous, we hold that appellant was not prejudiced.

The second statement obtained from appellant was not tainted by the first statement. In *Oregon v. Elstad,* 470 U.S. 298, 314, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court addressed the issue of the tainting of a second statement as follows:

> We must conclude that, absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent

choice whether to waive or invoke his rights.

Appellant's second statement, which was far more damaging than the first, was made after a 2-day interval and after appellant had been released from custody and was free to speak to his family and friends. This 2-day break in custody precludes an *Edwards* violation as to the second statement. *United States v. Vaughters*, 44 MJ 377 (1996) (*Edwards* does not apply when there has been a break in custody which affords the suspect an opportunity to seek counsel). It was obtained after a voluntary warning. Thus, this second statement is admissible under both *Elstad* and *United States v. Marquardt*, 39 MJ 239 (CMA 1994). Moreover, the victim of the robbery identified both appellant and his co-conspirator at trial.

Appellant's comprehensive second statement and the victim's identification of appellant at trial render any error in the admission of the first statement harmless.

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges GIERKE and EFFRON concur.

SULLIVAN, Judge (concurring in part and in the result):

Unlike the majority, and consistent with federal case law, I would find error in this case. Here, the police officer made a post-invocation-of-rights statement; then appellant reinitiated questioning and confessed. The statement of the police officer was:

> I want you to remember me, and I want you to remember my face, and I want you to remember that I gave you a chance.

This statement personalized the investigation and implicitly threatened appellant with retribution for exercising his right to counsel. *See Collazo v. Estelle*, 940 F.2d 411, 416–19 (9th Cir.1991). These were words that the police should know are reasonably likely to elicit an incriminating response from a suspect. *Id.* at 417, citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

Nevertheless, this error was harmless beyond a reasonable doubt for the reasons stated by the majority.