UNITED STATES, Appellee,

v.

Specialist Derrick L. MOSLEY, United States Army, Appellant.

ARMY 9601580.

U.S. Army Court of Criminal Appeals.

27 Jan. 2000.

For Appellant: Captain Thomas Jay Barrett, JA (argued); Colonel John T. Phelps II, JA; Lieutenant Colonel Michael L. Walters, JA; Major Leslie A. Nepper, JA (on original brief); Colonel John T. Phelps II, JA; Lieutenant Colonel Adele H. Odegard, JA; Major Leslie A. Nepper, JA; Captain Thomas Jay Barrett, JA (brief on specified issue).

For Appellee: Captain Troy A. Smith, JA (argued); Colonel Russell S. Estey, JA; Major Lyle D. Jentzer, JA (on original brief); Colonel Russell S. Estey, JA; Major Patricia A. Ham, JA; Captain Troy A. Smith, JA (brief on specified issue).

Before TOOMEY, Senior Judge, KAPLAN, and TRANT, Appellate Military Judges.

## OPINION OF THE COURT

TOOMEY, Senior Judge:

Pursuant to his pleas, appellant was found guilty by a military judge sitting as a general court-martial of attempted larceny and larceny (nineteen specifications) in violation of Articles 80 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 921 [hereinafter UCMJ]. The convening authority approved only so much of the adjudged sentence as provides for a bad-conduct discharge, confinement for thirty months, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

This case is before the court for automatic review pursuant to Article 66, UCMJ. We have considered the record of trial, appellant's three assignments of error, the government's reply thereto, the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and the oral arguments of counsel. The assignments of error do not merit corrective action; however, one issue merits discussion. Although not asserted as error, we will also address the failure of the staff judge advocate's (SJA) recommendation to comply with the mandates set forth in Rule for Courts–Martial 1106(d)(4) [hereinafter R.C.M.], and the application of *United States v. Gorski*, 47 M.J. 370 (1997), to appellant's case.

## DENIAL OF SUPPRESSION MOTION

Appellant's guilty pleas were entered pursuant to a pretrial agreement, allowing a "conditional guilty plea," which preserved appellant's right to appeal the military judge's ruling denying a suppression motion regarding seven specifications of larceny (Specifications 9–15 of Charge II). *See* R.C.M. 910(a)(2). Appellant asserted at trial and asserts on appeal that the evidence supporting his guilt as to these specifications resulted from a confession obtained in violation of his right to counsel. More specifically, appellant avers that a twenty-hour break in

custody was legally insufficient to permit Army Criminal Investigative Command (CID) investigators to reinitiate interrogation after appellant invoked his rights to silence and counsel during a previous custodial interrogation.[1]

### Facts

Appellant is a "barracks thief" who betrayed his fellow soldiers by stealing their personal property, military identification cards, bank cards, checks and checkbooks, and money located in various places, i.e., at the unit gymnasium, from cars in the gym parking lot, and from their shared barracks area. Appellant further victimized his fellow soldiers by using their stolen military identification cards and checks to withdraw money from their accounts, by uttering forged checks to obtain goods and money, and by charging goods on their accounts. The fruits of these thefts paid some of appellant's debts and improved his standard of living. His crimes caused his fellow soldiers numerous difficulties, inconveniences, and financial hardships.

Army CID investigators did not initially connect the multiple thefts as being the work of a single thief. A different team of investigators was assigned to investigate each individual crime.[2] As a result, the CID investigation was unfocused, and the CID investigatory net was generally widely slung and not suspect driven. Appellant was first questioned by one of these CID investigatory teams concerning two separate larcenies that occurred at the gym.[3] In response to a rights warning advisement given in custodial circumstances at about 1000 to 1100 hours on 14 February 1996, appellant invoked his rights to remain silent and to seek counsel. Questioning ceased immediately, and appellant was then processed for handwriting exemplars, fingerprints, and mug shots. At about noon, appellant was released to go about his duties or personal business. Appellant was not provided counsel, referred to counsel, or escorted to his unit. After appellant left the CID office, one of the initial investigators, an apprentice agent, suggested to another apprentice agent assigned to a separate investigative team [hereinafter second CID team], working different but similar offenses,[4] that appellant might be of interest in their investigation. A mug shot copy was exchanged, but the second CID team's apprentice agent was not told that appellant had invoked his right to counsel and his Article 31(b), UCMJ, rights.

The second CID team showed the mug shot to a witness in their investigation who identified appellant as likely being the individual who made fraudulent DPP purchases at AAFES.[5] The second CID team concluded that appellant was a viable suspect in their investigation and desired to obtain appellant's consent to search his barracks room. At about 1700 hours on 14 February 1996, the second CID team contacted appellant's chain of command who then attempted to locate appellant. Appellant's command was unable to find appellant in the unit area, gym, or at his place of duty.[6] Sometime between 1700 to 1730 hours, the investigators asked appellant's commander to

---

1. The government conceded that appellant's questioning at both the CID office and company commander's office constituted custodial interrogations.

2. Whichever team was on duty at the time a theft was reported assumed continuing investigative responsibility for that theft. The transfer of information within the CID office concerning ongoing investigations to identify potentially related crimes was minimal to nonexistent.

3. Appellant took one victim's military identification card and two checks. Appellant forged the two checks at the Army and Air Force Exchange Service (AAFES) for $150.00 each and further used the identification card to withdraw $191.76 directly from the victim's bank account. Appellant stole the second victim's military identifica-

tion card and $90.00 in cash from the victim's wallet.

4. Said similar offenses were: theft of a military identification card and checkbook from a car in the gym parking lot and related thefts of money and goods using forged checks and unauthorized AAFES Deferred Payment Plan (DPP) charges. These crimes constituted the bases of Charge II, Specifications 9–15.

5. The witness was also able to compare appellant's mug shot to pictures of the suspected perpetrator taken by AAFES security cameras.

6. Appellant worked varying shifts in the dining facility.

have appellant available for a meeting the following morning. The command continued to look for appellant in the unit area, gym, and place of duty, but was unable to find him. Sometime between 1930 to 2000 hours, the company commander ordered appellant's direct supervisor to have appellant at the commander's office at 0830 hours the next morning. The second CID team's lead agent testified that he desired to conduct a search of appellant's room for evidence and that he had obtained a search authorization from the military magistrate in case appellant did not consent to the search. The military judge found, and we agree, that this meeting was for the purpose of obtaining, if possible, appellant's consent to search his room.[7]

The second CID team met appellant, his direct supervisor, and appellant's commander and executive officer at appellant's unit at approximately 0830 hours on 15 February 1996.[8] · After the second CID team advised appellant of the purpose of their presence,[9] and of appellant's right to counsel and rights under Article 31, UCMJ, appellant responded that he understood his legal rights, and specifically declined legal counsel. Thereafter, when asked if he was willing to talk, appellant replied, non-responsively, that the items CID was looking for were not in his room, but were at a friend's place "downtown." Appellant consented to the barracks room search and was advised that a military magistrate had also authorized the search. No evidence was found in appellant's barracks room. After the search, appellant offered to go from Fort Eustis, Virginia, to an apartment in a downtown neighborhood of Newport News, Virginia, to retrieve both stolen property and items purchased with

forged stolen checks. The CID agents accompanied appellant downtown, recovered the items related to appellant's thefts, and questioned appellant further concerning certain unrecovered items. Appellant disclosed that he had thrown away a stolen checkbook and had given a friend a pair of athletic shoes purchased with a forged check. Appellant went back into the apartment to retrieve a stolen military identification card. On the way back to post, the second CID team stopped with appellant at a McDonald's Restaurant for a comfort break and a snack. Appellant was permitted to enter the downtown apartment unaccompanied and was not shackled or otherwise physically restrained during the trip downtown and back.

Once back at the CID office, appellant was again advised of his rights to counsel and against self-incrimination, and a rights warning certificate (DA Form 3881) was executed. Appellant requested an attorney, and questioning ceased. The second CID team called the local Trial Defense Service (TDS) office, advised that appellant had invoked his right to counsel, and arranged for appellant to be provided legal counsel. Defense counsel were present with appellant during a series of lineups conducted for witnesses the next day.

Appellant's statements to the second CID team, both preceding the room search and while at the downtown apartment, and the items retrieved from the downtown apartment were part of the evidence supporting the offenses charged in Specifications 9–15 of Charge II. Absent appellant's statements concerning the evidence located downtown and his act of taking the investigators downtown to retrieve the evidence, the govern-

---

7. The military judge based this finding on the following facts: (1) the second CID team's lead agent testified that his intent to meet with appellant was to conduct a search; (2) the second CID team obtained a search authorization before meeting with appellant; (3) the second CID team's lead agent did not bring a DA Form 3881, rights warning certificate, with him to the meeting; (4) immediately after introducing himself, the second CID team's lead agent informed appellant of the crimes they were investigating and the items they were looking for; and (5) the request for appellant's command to be present indicated an intent to search rather than to inter-

rogate, given that appellant's command would have been excluded if the second CID team's intent was to interrogate appellant.

8. The company commander left virtually immediately to attend to other company business, leaving the executive officer to observe the barracks area search.

9. The stated purpose was to search appellant's room for specifically identified implements and fruits of the larceny and forgery offenses, including a watch, jewelry, and a torn shirt.

ment had no independent knowledge of the evidence's location. The military judge made extensive factual findings, which we adopt as our own, and denied appellant's motion to suppress the contested evidence. Appellant then entered his conditional guilty plea and providently pled to the offenses.

### Law

#### Standards of Review

■ We review a military judge's ruling on the admission of evidence, including a motion to suppress, for an abuse of discretion. *See United States v. Young,* 49 M.J. 265, 266–67 (1998); *United States v. Ayala,* 43 M.J. 296, 298 (1995). Motions to suppress are mixed questions of fact and law. We will reject a military judge's findings of fact only if we find them to be clearly erroneous; we review a military judge's rulings on questions of law de novo. *See Ayala,* 43 M.J. at 298. "The military judge's determination that a confession is voluntary is a question of law, requiring independent, i.e., de novo, review. When a military judge makes special findings of fact, they are the basis for our review of the question of voluntariness, unless clearly erroneous." *United States v. Ford,* 51 M.J. 445, 451 (1999) (citations omitted).

#### Law of Interrogation

■ When an accused in custody requests counsel, interrogation must cease "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *see also* Military Rule of Evidence 305(f)(2) [hereinafter Mil.R.Evid.]. The *Edwards* holding applies to questioning regarding all offenses and is not limited to the offense for which the suspect invoked his right to counsel. *See Arizona v. Roberson,* 486 U.S. 675, 685, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). "Once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless counsel is present." *McNeil v. Wisconsin,* 501 U.S. 171, 177, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). In continuous custody cases, when an accused has invoked his right

to counsel, government officials may not reinitiate custodial interrogation without counsel being present, regardless of whether or not the accused has consulted with counsel. *See Minnick v. Mississippi,* 498 U.S. 146, 153, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *McNeil,* 501 U.S. at 177, 111 S.Ct. 2204. If government officials do so, then the accused's statements are presumed involuntary (*see McNeil,* 501 U.S. at 177, 111 S.Ct. 2204), and any subsequent waiver of the right to counsel obtained during the custodial interrogation concerning the same or different offenses is invalid (*see* Mil.R.Evid. 305(g)(2)(B)).

■ However, if the prosecution can demonstrate by a preponderance of the evidence that "the accused or suspect [had] not continuously had his or her freedom restricted by confinement, or other means, during the period between the request for counsel and the subsequent waiver," then the suspect's subsequent waiver of the right to counsel may be deemed valid. Mil.R.Evid. 305(g)(2)(B)(ii); *see also Young,* 49 M.J. at 268; *United States v. Vaughters,* 44 M.J. 377 (1996); *United States v. Schake,* 30 M.J. 314 (C.M.A.1990). Such a break in custody cannot be contrived or pretextual. *See Dunkins v. Thigpen,* 854 F.2d 394, 397 n. 6 (11th Cir.1988). Moreover, caselaw dictates that the accused must have a "reasonable" or "real" opportunity to seek counsel during the break in custody. *See United States v. Brabant,* 29 M.J. 259, 263 (C.M.A.1989) ("reasonable opportunity"); *Dunkins,* 854 F.2d at 397 ("reasonable opportunity"); *Schake,* 30 M.J. at 319 ("real opportunity"). Whether a break in custody "dissolves" an appellant's *Edwards* claim must be evaluated under the "totality of the circumstances." *See United States v. Bautista,* 145 F.3d 1140, 1150 (10th Cir.1998); *United States v. Faisca,* 43 M.J. 876, 878 (Army Ct.Crim.App.1996), *aff'd* 46 M.J. 276 (1997). Considering the totality of the circumstances, courts must ultimately determine whether a suspect's subsequent waiver of the right to counsel was voluntary and knowing. *See Edwards,* 451 U.S. at 482, 101 S.Ct. 1880; *Faisca,* 43 M.J. at 878.

### Discussion

We find that the military judge did not err in determining that under the totality of the

circumstances in this case, the break in custody dissolved appellant's *Edwards* claim, and appellant's waiver of his right to counsel on 15 February 1996 was voluntary and knowing.

Appellant seeks this court's holding that a twenty-hour break in custody is, as a matter of law, per se insufficient to free the government of *Edwards'* shackles, because it is not a reasonable period in which to seek and obtain counsel.[10] No other court has so held,[11] and neither do we.

### Break in Custody

Before addressing the reasonableness of the break in custody, it is appropriate to address whether there was in fact a break in custody and whether that break was contrived or pretextual. Trial defense counsel conceded, and the facts plainly support, that appellant was not in continuous custody. Appellant did not assert at trial, and does not assert on appeal, that the break in custody was contrived or pretextual. *See Dunkins,* 854 F.2d at 397. Accordingly, the military judge made no factual finding concerning this matter. However, reviewing the complete record of trial and exercising our authority under Article 66(c), UCMJ, we find that there was a break in custody and that the break in custody was not contrived or pretextual.

Among the facts supporting these findings are:

(1) trial defense counsel conceded that appellant was not in continuous custody;

(2) appellant was released without limits from the CID office to go about his own business;

(3) two inexperienced "apprentice" CID agents working separate investigations on

separate CID teams casually exchanged incomplete investigatory information concerning appellant;

(4) the two CID investigations were not coordinated;

(5) the first CID team did not request the second CID team to contact appellant;

(6) before attempting to contact appellant, the second CID team conducted an additional independent investigation to determine whether appellant might be a suspect in their case;

(7) the second CID team obtained a military magistrate's authorization to search appellant's barracks room prior to meeting with appellant;

(8) the military judge correctly found that the second CID team's purpose in contacting appellant on 15 February 1996 was to obtain appellant's consent to search appellant's barracks room; trial defense counsel conceded that this was legally permissible and not improper;

(9) appellant's statements to the second CID team followed a proper rights warning and were offered as a non-responsive reply to the question of whether he was willing to talk to the second CID team; and

(10) the testimony of the CID agents on the suppression motion was candid and believable.

### Reasonable Opportunity to Seek Counsel

The question of whether an appellant's opportunity to seek counsel during a break in custody is reasonable or real is ultimately fact specific and is evaluated, as stated above, under the totality of the circumstances. *See Bautista,* 145 F.3d at 1150; *Faisca,* 43 M.J. at 878. In sum, it is a test of

---

10. The core of appellant's argument, as stated at pages 4 and 6 of his brief, is:

The precise legal question here is whether a 20 hour break in custody is sufficient to overcome the presumptive taint of re-initiating an interview after SPC Mosley had invoked his right to counsel. Such a short period is not enough time; in reality, SPC Mosley had only one afternoon to seek out counsel.

. . . .

. . . [T]he time was too short for SPC Mosley to have a meaningful opportunity to seek out

counsel and to make a decision concerning waiving this previously invoked right.

11. *Cf. Young,* 49 M.J. at 268 (2–day break in custody dissolved appellant's *Edwards* claim); *Vaughters,* 44 M.J. at 378–79 (19–day break in custody dissolved appellant's *Edwards* claim); *Faisca,* 43 M.J. at 878 (6–month break in custody dissolved appellant's *Edwards* claim); *Schake,* 30 M.J. at 319 (6–day break in custody dissolved appellant's *Edwards* claim).

the quality of, rather than the quantity of, the break in custody time.[12] Trial defense counsel did not argue at trial that appellant did not, in fact, have a reasonable opportunity to obtain counsel, and the military judge's factual and legal findings did not address the issue of whether appellant was reasonably able to obtain counsel during the twenty-hour break in custody. Accordingly, we will examine and address this issue, using our Article 66(c), UCMJ, fact-finding power.

At trial appellant argued that the twenty-hour break in custody was insufficient to remove the taint of appellant's invocation of his right to counsel. Simply stated, trial defense counsel argued that the cases which allowed the admission of suspects' statements after custodial invocations of rights to counsel involved breaks in custody that were somewhat greater than twenty hours. Trial defense counsel did not effectively argue why, or present any evidence demonstrating why, twenty hours to seek counsel was not reasonable under the totality of the circumstances in the instant case. *Cf. Applewhite*, 23 M.J. at 199. The defense relied upon a simplistic interpretation that the government bore the sole burden of proof regarding the sufficiency of the break in custody. The specific burden placed on the prosecution by Mil.R.Evid. 305(g)(2)(B)(ii) is to "demonstrate by a preponderance of the evidence that—(ii) the accused or suspect has not continuously had his or her freedom restricted by confinement, or other means, during the period between the request for counsel and the subsequent waiver."

However, case law imposes the additional requirement, as argued now on appeal, that there not only be a break in custody, but that the accused have a reasonable or real opportunity to obtain counsel during that break in custody. *See Schake*, 30 M.J. at 319; *Brabant*, 29 M.J. at 261, 263; *Dunkins*, 854 F.2d at 397. What facts are necessary to determine reasonable opportunity, and who has the burden of demonstrating such facts? While the government has the burden of proving the break in custody,[13] obviously other factors determine the reasonableness of the break in custody, such as the command's control of appellant's movement during the break, appellant's duty requirements, and the availability of TDS counsel on-post and civilian counsel off-post.[14] Facts concerning appellant's decision whether or not to seek counsel during a break in custody, appellant's attempts to seek counsel, and TDS operations during this time period are generally not available to the government or within the government's control. Accordingly, where, as here, the break in custody is not contrived or pretextual, and nothing indicates that appellant did not have a reasonable opportunity to seek counsel, appellant also has a burden in perfecting his case, i.e., demonstrating that even though there was a break in custody, such break in custody was not a reasonable period to obtain counsel under the totality of the circumstances.

During the litigation of the suppression motion, the government presented evidence that: appellant was released from CID custody at approximately noon on 14 February 1996; appellant was a shift worker; ap-

---

12. *Cf. Young*, 49 M.J. at 268 (the court held that *Edwards* did not apply where there was a 2–day interval between interrogations and appellant was free to speak to his family and friends); *Schake*, 30 M.J. at 319 n. 5 (circumstances where appellant's TDS counsel was several hours away and appellant's unit made appellant an appointment for legal counseling which was two days after the contested interrogation did "not suggest to [the court] that [appellant] was unable to contact counsel during this period in some fashion"); *Brabant*, 29 M.J. at 263 (the court found that where appellant was apprehended at 0200 hours and held in continuous custody until a meeting with his commander at 0730 hours, the continuous custody and *early hour* did not provide appellant a reasonable opportunity to consult with counsel); *United States v. Applewhite*, 23 M.J. 196, 199 (C.M.A.1987) (presentation of evidence concerning the operation of the local TDS office allowed the military judge and the Court of Military Appeals to determine "that appellant's failure to contact a lawyer during the 5 days between interrogations was [not] unreasonable or indicative of a voluntary decision to forego the right of counsel previously invoked").

13. *See* Mil.R.Evid. 305(g)(2)(B).

14. *See, e.g., Applewhite*, 23 M.J. at 199 (while the court in *Applewhite* based its opinion on limited TDS office operations, we also note that appellant was investigated and tried in Panama, where appellant's access to a qualified United States civilian attorney might be further limited.).

pellant was not able to be found in the barracks area, gym, or working at his place of duty between 1700 and 2000 hours that evening; and appellant apparently was free to go about his personal business during the twenty-hour break in custody between noon on 14 February 1996 and his morning dining facility shift on 15 February 1996.

At the Article 39(a), UCMJ, session on the suppression motion, appellant neither contradicted the government's evidence that appellant was released from custody and had a twenty-hour opportunity to seek counsel, nor presented any evidence that appellant was unable to consult with counsel.[15] Appellant, the sole party with complete knowledge of his own actions and freedom of action during the twenty-hour break in custody, did not testify on the motion concerning his actions during his release from custody. No evidence was presented indicating that TDS or civilian legal counsel was unobtainable during the period of the break in custody. Moreover, the record of trial contains information indicating that appellant had obtained TDS counseling previously, so it may be inferred that appellant was familiar with TDS' location and operating procedures. Whether an appellant acts to perfect and protect his rights during a break in custody is a matter of appellant's own free choice and prerogative. *See United States v. Whitehouse,* 14 M.J. 643, 645–46 (A.C.M.R.1982).

We find that: (1) the contested interrogation and statements followed a break in custody; (2) the break in custody was not contrived or pretextual; and (3) the contested statements were obtained subsequent to a rights warning advice and were offered as non-responsive answers to the question of whether appellant was willing to talk to the second CID team. Likewise, there was no evidence presented at trial or on appeal demonstrating that counsel could not be reasonably contacted or obtained during this twenty-hour break in custody. Considering the totality of the circumstances, appellant's waiver of his rights to counsel and silence were voluntary and knowing. Accordingly, we hold that the military judge did not abuse his discretion in the instant case by finding that appellant's statements to the second CID team on 15 February 1996 were admissible.

## SJA's POST–TRIAL RECOMMENDATION

■ Although not assigned as error, we note that the SJA's post-trial recommendation failed to address assertions of legal error contained in appellant's combined R.C.M. 1105 and 1106 submissions.[16] Rule for Courts–Martial 1106(d)(4) mandates that when an appellant's R.C.M. 1105 submission alleges legal error, the staff judge advocate's recommendation "shall state" whether "corrective action on the findings or sentence should be taken." However, in *United States v. Green,* 44 M.J. 93, 95 (1996), our superior court, addressing the failure of the SJA's recommendation to address alleged legal error, stated:

> The SJA's failure to do this, however, does not result in an automatic return by the appellate court of the case to the convening authority. Instead, an appellate court may determine if the accused has been prejudiced by testing whether the alleged error has any merit and would have led to a favorable recommendation by the SJA or

15. Appellant did present evidence in the form of his supervisor's testimony that the supervisor believed that appellant *should* have been present for duty again beginning at 1600 hours on 14 February 1996 because of the arrangement of the split shifts. However the supervisor could not testify that appellant was indeed present for duty that evening. The failure of the unit to find appellant either in the unit area, gym, or at the dining facility during that period supports a factual finding that appellant was not present for duty that evening.

16. Appellant asserted four legal errors in the conduct of appellant's trial and the preparation of the SJA's recommendation: (1) the Article 32, UCMJ, investigating officer was provided a copy of the CID investigation file prior to conducting the Article 32, UCMJ, investigation; (2) the SJA and his subordinates should be disqualified from preparing the R.C.M. 1106 recommendation because one of the SJA's subordinates acted as legal advisor to the Article 32, UCMJ, investigating officer; (3) the military judge erred in his ruling on the suppression motion; and (4) the military judge erred by stating what his sentence would have been if he had dismissed Specifications 9 through 15 of Charge II, pursuant to the suppression motion.

corrective action by the convening authority.

We have carefully reviewed the record of trial and find the assertions of legal error contained in appellant's post-trial submissions to be without merit. Moreover, because such assertions were without merit, said assertions would not have led to a favorable SJA recommendation or corrective action by the convening authority. Accordingly, appellant did not suffer any prejudice as the result of any such error. *See United States v. Wheelus,* 49 M.J. 283, 289 (1998); *Green,* 44 M.J. at 95; *see also* UCMJ art. 59(a).

## APPLICATION OF *UNITED STATES V. GORSKI*

Although not assigned as error, we note that appellant is within the class of persons who are entitled to protection under *United States v. Gorski,* 47 M.J. 370 (1997), and address the matter of relief in our decretal paragraph.

We have considered the remaining assignments of error and the matters appellant asserted pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The *Gorski* issue and its remedy are administrative in nature and do not affect the approved sentence. Accordingly, the findings of guilty and the sentence are affirmed. Any forfeitures and/or reduction in grade executed as part of the court-martial sentence or by operation of law prior to the date of the convening authority's action are hereby declared to be without legal effect. Any such forfeitures already collected from appellant, and any pay and allowances withheld because of a premature reduction in grade, will be restored. The *Gorski* issue is referred to The Judge Advocate General for appropriate disposition. Accordingly, The Judge Advocate General will determine the amount of relief, if any, that is warranted, subject to any setoffs that may arise under applicable law or regulations. There is no requirement that this matter be returned to the court.

Judges KAPLAN and TRANT concur.