CRAWFORD, Chief Judge
(concurring in part and in the result):
I agree with the majority’s discussion of Issues II and III. However, as to Issue I, I agree with the military judge that a “[pjolice-man’s ... uncommunicated decision to arrest ... does not bear on whether the suspect is in custody.” Based on the facts and this conclusion of law, she correctly held that appellant was not in custody.
FACTS
After returning home from a 2 months’ deployment, appellant became convinced that his best friend, A1C Walker, had began a sexual relationship with appellant’s wife. In Walker’s presence, appellant’s wife said she wanted to leave him. Appellant than “struck A1C Walker on the back of the head with an object, knocking him onto a couch,” and “gouged A1C Walker’s eyes with his fingers.” Then “appellant’s mother, who lived with the appellant,- stopped the fight;” but “appellant indicated he intended to ‘finish this tonight.’ ” Walker, fearing for his life, and appellant’s wife, “fled the house” and went “to the nearby residence of SSgt R.” Unpub. op. at 2.
After leaving the house, Walker phoned the Clovis, New Mexico, Police Department and reported the assault. A bit after the police arrived at SSgt R’s residence, appellant’s wife told the police that her husband had used a gun to hit Walker. Both SSgt R and the police officer “testified that while at the apartment,” appellant’s wife “was excited, frantic, and appeared afraid.” She was taken back to her home. Arriving at her home, appellant’s wife told the police officer “that she was not having an affair”; “still loved her husband, and had been with him” for many years. Unpub. op. at 3.
Later, the officers informed appellant that they were investigating the alleged assault. At the time they noticed “blood on the walls, floor, and couch,” but observed that “appellant exhibited no injuries.” Appellant became agitated when he was telling the police about his wife’s affair with Walker. When appellant was informed that a weapon had been used in the assault, he denied using a gun. After this denial, he “consented to a search of his residence.” While the search was ongoing, appellant went to the kitchen to get a popsicle; he then returned to the living room and talked to his mother who lived with him. He also talked to his father on the telephone. Later, a police officer found a holster but no gun, and asked appellant what had happened. At the same time the officer noticed a bloodstained rawhide dog bone on the floor. He asked appellant if the dog bone was used to hit Walker. Appellant responded that he had used it. The officer again questioned appellant about a gun but appellant repeated his denial of using a gun, saying he only used the dog bone and a sailfish statue. After seizure of the dog bone and the sailfish statue, appellant was arrested and warned of his rights. He asked for counsel. Unpub. op. at 5-6.
According to the court below:
While at his residence, the appellant was never told he was under arrest nor was he handcuffed. Although the appellant was never told he could not leave the premises, Officer M testified that the appellant was not free to leave the premises and would have been stopped if he tried. Officer M *409 stated that while the appellant was detained, he was not in custody.
Unpub. op. at 6.
DISCUSSION
The judge’s decision on the suppression motion is reviewed for an abuse of discretion. United States v. Young, 49 MJ 265, 266-67 (1998); United States v. Schelkle, 47 MJ 110, 112 (1997), cert. denied, 522 U.S. 1078, 118 S.Ct. 857, 139 L.Ed.2d 756 (1998). A judge’s findings of fact are accepted unless clearly erroneous. See, e.g., United States v. Bins, 43 MJ 79, 83 (1995); United States v. Wallace, 39 MJ 284, 286 (CMA 1994). However, the question of custody is “a ‘mixed question of law and fact’ qualifying for independent review.” Thompson v. Keohane, 516 U.S. 99, 113, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).
In United States v. Miller, 45 MJ 149 (1996), this Court, relying on Stansbury v. California, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), adopted an objective test rather than a subjective test to determine whether a person is in custody. See also United States v. Meeks, 41 MJ 150, 161 n. 3 (CMA 1994). Thus, the subjective intent of the officer as to what might happen if appellant tried to leave is not taken into consideration in determining whether custody existed, unless this intent is communicated to appellant. Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). See also Stansbury, 511 U.S. at 319, 114 S.Ct. 1526. Where the intent to make a seizure has not been communicated to the suspect, a number of federal courts have held that an interrogation in a suspect’s home is non-custodial. See, e.g., United States v. Rith, 164 F.3d 1323, 1332 (10th Cir.), cert. denied, 528 U.S. 827, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999); United States v. Mitchell, 966 F.2d 92, 98 (2d Cir.1992); United States v. Lanni, 951 F.2d 440, 442-43 (1st Cir.1991).
In Dickerson v. United States, 530 U.S. 428, 431-32, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), the Court stated that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), “held that certain warnings must be given before a suspect’s statement made during custodial interrogation could be admitted in evidence.” Because Miranda is a rule of “constitutional” dimension, the Court held that Congress does not have the right to overrule it. The Court reiterated that the reason for Miranda was the difficulty of sorting out what constitutes a voluntary confession. 530 U.S. at 435, 120 S.Ct. 2326. It is particularly difficult to determine voluntariness when an interrogation takes place in the isolation of the police station where there are no witnesses other than the suspect and police officers. Id. at 435, 120 S.Ct. 2326. The Court emphasized in Miranda that in a custodial interrogation, the suspect “was cut off from the outside world,” and placed in a “police-dominated atmosphere.” Miranda, 384 U.S. at 445, 86 S.Ct. 1602. Generally, interrogations involving deceit and trickery can occur in the secrecy of the police station. As has been said:
Custodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officers’ will and to confess.... [Cjustodial arrest thrusts an individual into ... “an interrogation environment ... created for no purpose other than to subjugate the individual to the will of the examiner.” Many of the psychological ploys discussed in Miranda capitalize on the suspect’s unfamiliarity with the officers and the environment.... Finally, the coercion inherent in custodial interrogation derives in large measure from an interrogator’s insinuations that the interrogation will continue until a confession is obtained.
Minnesota v. Murphy, 465 U.S. 420, 433, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (citation omitted).
The Supreme Court has addressed custodial interrogations outside the stationhouse in two cases. Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), and Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). Cf. Minnesota v. Murphy, supra.
In Beckwith, two special agents from the IRS went to the defendant’s private residence at 8:00 a.m. Upon arrival they identified themselves as IRS agents and asked to speak to Beckwith. They were invited into *410 the house and asked to wait while Beckwith finished dressing. Then Beckwith came out and sat down at the dining room table with the agents. They informed Beckwith that they were investigating a possible criminal tax fraud. Without giving a complete Miranda warning, they did advise him that under the Fifth Amendment to the Constitution of the United States, you cannot be compelled to answer any questions. Beck-with acknowledged that he understood his rights and was interviewed by the agents for nearly 3 hours. The conversation was described as friendly and relaxed and Beckwith was not pressed. At the conclusion of the interview the senior agent received permission from Beckwith to inspect certain records. The Court held that this interrogation did not constitute a custodial interrogation. Likewise, in Murphy, the Court held that an interrogation at the defendant’s office was not a custodial interrogation. 465 U.S. at 429-30,104 S.Ct. 1136.
This is not a case that takes place at the police station or where four officers are permitted to enter the defendant’s boardinghouse room at 4:00 a.m. “by an unidentified woman.” Orozco, supra at 325, 89 S.Ct. 1095. The Court noted that while “petitioner was interrogated on his own bed, in familiar surroundings,” id. at 326, 89 S.Ct; 1095, Or-ozco was “under arrest and not free to leave.” Id. at 327, 89 S.Ct. 1095. The dissenters in Orozco stated: “Even accepting Miranda, the Court extends the rule here and draws the straitjacket even tighter.” Id. at 328, 89 S.Ct. 1095 (White and Stewart, JJ., dissenting).
In this case, there was no “ ‘formal arrest or restraint on freedom of movement’... associated with a formal arrest.” California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). This interrogation took place on appellant’s “own turf.” United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir.1985). The Miranda decision was aimed at alleviating the subtle and not so subtle pressures that take place at a stationhouse interrogation or where an individual is placed in unfamiliar surroundings removed from family members and friends. Appellant was free to talk on the telephone, to go to the kitchen to get a popsicle, was not handcuffed, and was not ordered to remain in a specific location. While appellant “at some point” was asked in effect not to interfere with the search or investigation, this is reasonable police conduct constituting no more than a temporary detention and did not result in a formal arrest or custody at that time. Cf. Illinois v. McArthur, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001). In fact, when the police arrived at the house, they did not use their lights or sirens and did not use any of the subtle coercions mentioned in Miranda. Nor is this an instance like Helmel where the police “answered all incoming telephone calls.” Even so the court in Helmel held that there was no custodial interrogation. See, e.g., 769 F.2d at 1320. The police did not threaten Catrett with criminal charges or imprisonment, or subject him to a prolonged interrogation. See, e.g., Lanni, 951 F.2d at 441-43 (interview in defendant’s home around 8 a.m. just after she had awakened, gotten dressed, and opened the door not custodial interrogation). Thus, Catrett was not in custody and no rights’ warnings were required.
For these reasons only I agree with the majority’s disposition of Issue I.