# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class WILLIE J. BOSTICK**
**United States Army, Appellant**

ARMY 20140880

Headquarters, United States Army Maneuver Center of Excellence
Charles A. Kuhfahl, Jr., Military Judge
Lieutenant Colonel John M. McCabe, Acting Staff Judge Advocate

For Appellant: Captain Katherine L. DePaul, JA (argued), Lieutenant Colonel
Charles A. Lozano, JA; Major Andres Vazquez, Jr., JA; Captain Katherine L.
DePaul, JA (on brief and reply brief).

For Appellee: Captain Linda Chavez, JA (argued); Colonel Mark H. Sydenham, JA;
Lieutenant Colonel A.G. Courie III, JA; Captain Linda Chavez, JA (on brief).

29 March 2017

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Senior Judge:

On appeal, appellant asks us to set aside his convictions for sexual assault and other assorted offenses because the military judge erred by not suppressing appellant's statement to an investigator and by granting a government peremptory challenge of a female panel member without eliciting a sufficient gender-neutral reason.[1] We resolve both issues against appellant.

---

[1] The court heard oral argument on the issue of appellant's statement at Boston University School of Law in Boston, Massachusetts.

## BACKGROUND

A panel with enlisted representation, sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of fleeing apprehension, two specifications of sexual assault, and one specification of assault consummated by battery, in violation of Articles 95, 120 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 895, 920, 928 (2012, 2012 & Supp. IV 2014) [hereinafter UCMJ]. The convening authority approved appellant's adjudged sentence to a dishonorable discharge, confinement for eight years, forfeiture of all pay and allowances, and reduction to the grade of E-1. We now review this case on appeal pursuant to Article 66, UCMJ.

## LAW AND DISCUSSION

### A. Suppression of Accused's Statement

On 24 April 2014, Ms. SB reported appellant sexually assaulted her the previous evening. That same day, Special Agent (SA) IM from the U.S. Army Criminal Investigation Command (CID) interviewed appellant. After several denials, appellant eventually admitted to vaginally penetrating Ms. SB with his penis. At trial, appellant's counsel moved to suppress the videotape of this interview, claiming SA IM improperly reinitiated the interrogation after appellant invoked his right to counsel.

After reviewing the recorded interview and hearing appellant's testimony, given for the limited purpose of the motion, the military judge made the following findings of fact:

> 1) On 24 April 2014, SA [IM] conducted an interview of the accused.
>
> 2) SA [IM] advised the accused of his Article 31 rights using a [Dep't of the Army] DA Form 3881.
>
> 3) The accused acknowledged verbally that he understood his rights and he initialed next to each right on the DA Form 3881.
>
> 4) At 24 [minutes and] 51 [seconds] into the videotaped interview, the accused state[d], "yes" in response to whether or not he want[ed] a lawyer.
>
> 5) At 24:52 . . . the SA [IM] state[d], "You do want a lawyer."

6) At 24:54 . . . the accused again state[d], "yes."

7) At 24:56 . . . the accused state[d], "Can you suggest things for me?"

8) At 24:59 . . . SA [IM] twice state[d], "I can't."

9) Between 25:02 and 25:13 . . . SA [IM] state[d], "Like I said, it's totally up to you. If you would like to speak to a lawyer you are more than welcome to do that. If you would like to sit here and discuss it, you can sit here and discuss it as well."

10) At 25:22 . . . the accused state[d], "I still would like to speak to you."

11) At 25:25 . . . SA [IM] ask[ed] the accused, "Are you sure."

12) At 25:28 . . . the accused state[d], "yes."

13) At 25:45 . . . the accused signe[d] the DA Form 3881 waiving his right to a lawyer and agreeing to speak with SA [IM].

Based upon these findings of fact, the military judge concluded appellant "initiated the communication after his invocation of counsel leading to the subsequent waiver of said counsel."

In rendering this conclusion, the military judge first found appellant, having been informed of his rights under Article 31, UCMJ, "made an initial invocation of his right to counsel," noting that Military Rule of Evidence [hereinafter Mil. R. Evid.] 305(c)(2) normally renders any statements in response to interrogation after such an invocation inadmissible. However, the military judge then cited to Mil. R. Evid. 305(e)(3)(A)(i), which provides an exception to the exclusionary rule in Mil. R. Evid. 305(c)(2) "where an accused subsequently waives the right to counsel after invocation and 'the accused or suspect initiated the communication leading to the waiver.'" He further quoted the same exception as set forth in *Edwards v. Arizona*, where the Supreme Court stated ". . . an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. 477, 485 (1981).

3

At trial and on appeal, appellant asserted SA IM, in repeating appellant's answer in requesting counsel, attempted to persuade appellant to waive his right to counsel and noted the SA IM repeated appellant's answer on at least ten occasions prior to his invocation of counsel. The military judge rejected appellant's assertion, stating:

> [T]his court will not unilaterally apply a nefarious motive to [SA IM's] action of simply verifying the accused's desire for counsel where the evidence suggests a reasonable and probable alternative. This court specifically finds [SA IM] did not re-initiate the interrogation by confirming the accused's answer.

The military judge concluded appellant's question to SA IM—whether she could "suggest things for [him]"—be a valid re-initiation of the interview. The military judge found these circumstances "similar, if not identical" to those in *Oregon v. Bradshaw*, where the Supreme Court found the accused's action in asking the police officer ". . . what is going to happen to me" after earlier invoking his right to counsel constituted a valid re-initiation of the interrogation. 462 U.S. 1039, 1042 (1983).

Finally, the military judge found appellant: verbally stated he understood his rights, initialed those rights on a DA Form 3881, confirmed to SA IM he was "sure" he wanted to talk to her without counsel, and confirmed he could stop questioning at any time. The military judge concluded appellant voluntarily, knowingly and intelligently waived his right to counsel. Accordingly, the military judge denied defense counsel's motion to suppress appellant's statements made after the invocation of counsel and later admitted at trial by the government.

We review a military judge's denial of a motion to suppress an accused's confession for an abuse of discretion. *United States v. Chatfield*, 67 M.J. 432, 437 (C.A.A.F. 2009) (citing *United States v. Pipkin*, 58 M.J. 358-360 (C.A.A.F. 2003)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion." *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000). We will not upset a military judge's findings of fact supporting a denial of a motion to suppress an accused's statement unless those findings are clearly erroneous or unsupported by the record. *Chatfield*, 67 M.J. at 437 (citing *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007)). We review the military judge's conclusions of law supporting the motion to suppress de novo. *Chatfield*, 67 M.J. at 437.

As an initial matter, we find the military judge's findings of fact are clear and supported by the record and we therefore adopt them. At issue here is whether

4

appellant reinitiated the interview with SA IM after invoking his right to counsel and whether his subsequent waiver of counsel was valid.

The Fifth Amendment privilege against self-incrimination encompasses the right to silence and the right to counsel during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 471-72 (1966). Where, as here, an accused in custody who:

> expresse[s] his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards,* 451 U.S. at 484-85. When an accused invokes his right to counsel during an interrogation, "officials may not reinitiate interrogation without counsel present." *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990).

"What constitutes an interrogation defies a simple definition." *United States v. Young*, 49 M.J. 265, 267 (C.A.A.F. 1998). An interrogation includes the "express questioning or its functional equivalent," to include "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *see also* Mil. R. Evid. 305(b)(2). "The definition of 'functional equivalent' 'focuses primarily upon the perceptions of the suspect, rather than the intent of the police.' It includes action 'that the police should know is reasonably likely to evoke an incriminating response from a suspect.'" *Young*, 49 M.J. at 267 (C.A.A.F. 1998) (quoting *Innis*, 446 U.S. at 300-01)).

The fundamental purpose of the *Edwards* rule is to "[p]reserv[e] the integrity of an accused's choice to communicate with police only through counsel." *United States v. Hutchins*, 72 M.J. 294, 297-98 (C.A.A.F. 2013) (quoting *Patterson v. Illinois*, 487 U.S. 285, 291 (1988)). While *Edwards* was designed to prevent police from badgering a suspect, it did not impose a "blanket prohibition against a comment by a police officer after invocation of rights." *Young*, 49 M.J. at 267.

As explained by the Supreme Court:

> [T]here are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to "initiate" any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a request to use a telephone, that are so routine that they cannot be fairly said to represent a desire on the part of an

> accused to open up a more generalized discussion relating
> directly or indirectly to the investigation. Such inquiries
> or statements, by either an accused or a police officer,
> relating to routine incidents of the custodial relationship,
> will not generally "initiate" a conversation in the sense in
> which that word was used in *Edwards*.

*Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983).

Having personally watched the videotaped interview, to include SA IM's demeanor and manner of asking questions, we are well-satisfied that SA IM did not intend to reinitiate questioning and *did not* reinitiate questioning. We, therefore, concur with the military judge's conclusions of law that SA IM did not reinitiate the interrogation of appellant by confirming his answer that he wanted counsel. Having reviewed the video of the interrogation, we find pursuant to Article 66(c), UCMJ, as a matter of fact, when SA IM asked appellant a second time whether he wanted an attorney, she did not act in a manner designed to overcome appellant's invocation of counsel. Nothing unique at this point of the interview suggests SA IM badgered appellant or otherwise attempted to infringe upon his election for counsel. Viewing the interview in its entirety, it is apparent SA IM repeated many of her questions both before and after this point of the interview.

We likewise concur with the military judge that appellant, in asking "Can you suggest things for me" reinitiated the discussion with SA IM. On this point, we find little light between this case and *Bradshaw*, where the defendant was found to have reinitiated the conversation with police in asking "well, what is going to happen to me now?" 462 U.S. at 1045-46. Appellant's question of "can you suggest things for me" was not an inquiry unrelated to his interview or the subject of SA IM's inquiry. Special Agent IM reasonably interpreted this request as related to the investigation, as became apparent when she told appellant that he could speak with a lawyer or instead discuss the investigation with her. This later clarification by SA IM was not a re-initiation of the interrogation by SA IM, but rather a response to appellant's question that opened the door for continued questioning. Further, SA IM's response to appellant's inquiry by twice saying "I can't" clearly signaled to appellant SA IM was not going to give appellant legal advice.

*Edwards* does not prevent an accused from changing his mind and choosing to speak with the police. *Young*, 49 M.J. at 267 (internal citation omitted). Here, appellant agreed to speak with SA IM after he reinitiated the interrogation. Where a violation of the *Edwards* rule has not occurred and appellant waives the right to counsel, the inquiry becomes:

> whether a valid waiver of the right to counsel and the right
> to silence had occurred, that is, whether the purported

> waiver was knowing and intelligent and found to be so
> under the totality of the circumstances, including the
> necessary fact that the accused, not the police, reopened
> the dialogue with the authorities.

*Bradshaw*, 462 U.S. at 1046 (quoting *Edwards*, 451 U.S. at 486, n.9)).  Having reviewed the record, we agree with the military judge appellant made a knowing, voluntary, and intelligent waiver of his right to counsel.  Appellant verbally and in writing acknowledged his right to counsel.  After indicating he wanted to speak with SA IM, appellant assured her he wanted to speak to her.  In addition to signing his waiver of counsel on the DA Form 3881, appellant wrote "I am willing to speak now."  In short, SA IM made painstaking efforts in both advising appellant of, and ensuring he understood, his rights.

Accordingly, we find the military judge did not err in denying appellant's motion to suppress his statement to SA IM.

### B. Peremptory Challenge

We next address the issue of whether the military judge erred when he granted the government's preemptory challenge of a female panel member during voir dire.  The panel initially consisted of five officer and five enlisted members.  Three of these members, Colonel (COL) PL, Captain (CPT) ES, and Command Sergeant Major (CSM) NE, were female.  During group voir dire, six members, to include COL PL and CSM NE, answered yes when asked by defense counsel if they were "aware of an incident where a person made false allegations of sexual assault[.]"  All six of these members were later called back for individual voir dire.  On this question, the members each explained their responses.

Colonel PL stated that over the course of "a variety of command positions having UCMJ authority there had been instances where investigations have concluded that there was not substantive evidence to say that the accusation was true."  She further clarified she never personally received a report from a complaining witness, but rather the allegations proved false based on the admission of the complaining witness or based on the findings of the investigating officer.

Lieutenant Colonel (LTC) RS, a male, explained he served as an Article 32, UCMJ, investigating officer on a case where the alleged victim came forward to say the allegations of sexual assault she made were false.

Lieutenant Colonel JS, a male, had earlier in his career served as a company commander.  At that time, a female claimed she was raped by four males.  However, a videotape uncovered during the investigation proved the allegation was false.

Lieutenant Colonel JP, also male, while assigned to the United States Military Academy (USMA), had a female cadet in his unit who, as she later admitted, fabricated a rape allegation after being accused of violating the honor code.

Command Sergeant Major NE clarified she was generally aware as a senior leader that false rape allegations occurred but did not know of a specific case and never had a false allegation in any case on which she advised a commander.

Master Sergeant RB, a male, explained that he was aware of false allegations of rape from his time as a sexual assault response coordinator.

After voir dire, the government did not challenge any members for cause. Defense counsel challenged MSG RB and CPT ES for cause. The military judge granted the former challenge, but denied the later. This result left nine members, three of whom were women.

The government exercised its peremptory challenge against COL PL. Defense counsel asked the military judge to have the government provide a *Batson*[2] justification for the challenge. The special victim prosecutor (SVP) thereafter explained that COL PL has "tak[en] prior allegations of sexual assault and believed them to be false" which "may not be beneficial to the government's case." Defense counsel, not satisfied with this explanation, pointed out that this same justification for exercising the peremptory challenge against COL PL also applied to the male members of the panel who had indicated on voir dire that they were aware of an allegation of sexual assault that proved false.

After a recess, the military judge granted the government's peremptory challenge against COL PL and noted the government had provided a gender-neutral reason for exercising that challenge. Specifically, the military judge found the government's reasoning "[. . .] in that [COL PL] has taken previous allegations of sexual assault and believe[d] some of them to be false to be a legitimate, a reasonable and not a nonsensical reason." The military judge determined, since a sufficiently gender-neutral reason was provided to support that challenge, the government was not also required to provide another reason for excusing COL PL rather than one of the male members.

"[A] military judge's determination that the trial counsel's peremptory challenge was race-neutral is entitled to 'great deference' and will not be overturned absent 'clear error.'" *United States v. Hurn*, 58 M.J. 199, 201 (C.A.A.F. 2003) (citing *United States v. Williams*, 44 M.J. 482, 485 (C.A.A.F. 1996)).

---

[2] *Batson v. Kentucky*, 476 U.S. 70 (1986).

"Gender, like race, is an impermissible basis for the exercise of peremptory challenge by either the prosecution or the military accused." *United States v. Witham*, 47 M.J. 297, 243-44 (C.A.A.F. 1997). Upon a timely objection by defense at trial, the trial counsel when exercising a peremptory challenge must provide a gender-neutral explanation for the challenge. *United States v. Ruiz*, 49 M.J. 340, 344) (C.A.A.F. 1998) (citing *United States v. Moore*, 28 M.J. 366, 368 (C.M.A. 1989)). This challenge may not be based on a reason that is "unreasonable, implausible, or that otherwise makes no sense." *United States v. Tulloch*, 47 M.J. 283, 287 (C.A.A.F. 1997).

The situation presented in this case undoubtedly happens in courts-martial on a regular basis: counsel, with only one peremptory challenge each, have to choose between two or more members who may be, for legitimate reasons, less than ideal.

While we would note counsel for both sides in such situations often exercise their peremptory challenge on the most senior member, we will not delve into possible underlying reasons for trial counsel's challenge of COL PL. The justification provided by trial counsel on the record that she had previously "tak[en] prior allegations of sexual assault and believed them to be false" was not unreasonable, implausible, or nonsensical. Simply, in prosecuting a sexual assault charge, a trial counsel understandably should be concerned with a member who is aware of cases involving false allegations of sexual assault might subconsciously harbor a generalized skepticism of such claims.

We do not share appellant's view this case is similar or controlled by *Hurn*, where our superior court rejected the race-neutral reason proffered by trial counsel for challenging the only non-Caucasian member of a panel. 58 M.J. at 448. *Hurn* was a panel with both officer and enlisted members. The government exercised its challenge so that the panel did not fall below a quorum with sufficient enlisted representation. *Id.* The Court of Appeals for the Armed Forces (CAAF) rejected this reason because trial counsel failed to explain why the challenge was exercised against the non-Caucasian officer instead of any of the Caucasian officers. *Id.* at 449.

*Hurn* is easily distinguished from this case, because the stated challenge there had nothing to do with the relative qualifications of the officer being challenged. That is, stripping away the quorum issue, trial counsel failed to articulate a race-neutral reason for challenging the non-Caucasian officer. Here, trial counsel had a legitimate basis to challenge several members based upon their past experience or knowledge of false claims of sexual assault. Having but one challenge, trial counsel sufficiently articulated a gender-neutral reason to excuse COL PL. Having so concluded, we find no error.

**CONCLUSION**

Finding no error, the findings of guilty and sentence are AFFIRMED.

Judge FEBBO and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court